924 P.2d 908 (1996)
130 Wash.2d 430
John F. BROWN, Jr., and Priscilla J. Brown, husband and wife; Maynard H. Linder and Deloris J. Linder, husband and wife; John L. Miller and Darlene L. Miller, husband and wife; Truman Winegar and Phoebe Winegar, husband and wife; and B.F. George and Nina George, husband and wife, Appellants,
v.
The STATE of Washington, Respondent/Cross Appellant.
Paul Herman HARDER, a single person; Eloise Potts, a widow; and Robert H. and Norma M. Spencer, husband and wife, Respondents,
v.
The STATE of Washington, Appellant.
Norman and Arlene BAILEY, husband and wife; Belsby Ranches, Inc., a Washington corporation; U.S. Bank of Washington, as Trustee of the Wilmer Trust; James W. and Doris G. Potts, husband and wife; Harold and Agnes Clem, husband and wife; Baker-Boyer Bank, as Trustee of the Rosalia Baker-Smith Trust; Gertrude Simpson, a married person dealing in her sole and separate property; Theodore K. Simpson, a married person dealing in his sole and separate property; Francis W. Simpson, a married person dealing in his sole and separate property; John B. Simpson, a married person dealing in his sole and separate property; Thomas A. Simpson, a married person dealing in his sole and separate property; Mary Rickel, a single person; Margaret Smith, a single person; Charles Lowe, a single person; Judy Lowe, a single person; Michael L. and Linda Hall Siler, husband and wife; L. Laverne and Mary Elizabeth Siler, husband and wife, Maurice Allert, a married man dealing in his sole and separate property; Evonne Donna Carlson, a single person; C. Louise Cox, a single person; Eva Ellwart, a single person; Mary Hill, a single person; Amy Hill, a single person; James Hill, a single person; and Marie Hill, a single person, Respondents,
v.
The STATE of Washington, Appellant.
Nos. 62217-5, 61376-1 and 61375-3.
Supreme Court of Washington, En Banc.
Argued January 16, 1996.
Decided October 17, 1996.
Reconsideration Denied November 20, 1996.
*909 Kenneth D. Beckley, Attorney at Law, Ellensburg, for appellants Brown, Linder, Miller, Winegar, and George.
Keller, Rohrback, T. David Copley, John H. Bright, III, Seattle, for the State.
Dan J. Cadagan, III, Attorney at Law, Spokane, for respondents Bailey, Belsby Ranches, Inc., Simpson, Carlson, Cox, Ellwart, Harder, Potts, and Spencer.
JOHNSON, Justice.
This case involves a dispute over title to property formerly used as a railway in Adams, Kittitas and Whitman counties. The dispute is between abutting property owners claiming reversionary interests and the State, which purchased the property from *910 the Chicago, Milwaukee, St. Paul & Pacific Railroad Company (Milwaukee) for a rails to trail project. The property owners claim the property reverted to them when Milwaukee discontinued its rail service because Milwaukee held only right of way easements in the property. The State claims fee simple title based upon the original interest conveyed when Milwaukee acquired the property either by deed or charter from the federal government. We hold the original deeds conveyed fee simple title to Milwaukee, and therefore, the State, based on the facts the deeds are in statutory warranty form, expressly convey fee simple title, and contain no express or clear limitation or qualification otherwise. In addition, we hold the property Milwaukee obtained by charter did not revert to the property owners, based on the fact Congress authorized the sale before abandonment pursuant to 43 U.S.C.A. § 912. We affirm the trial court's decision in Kittitas County and reverse the trial courts' decisions in Adams and Whitman counties.

FACTS
Milwaukee acquired most of the property at issue between 1906 and 1910 for the purpose of constructing a railway across eastern Washington, linking Tacoma and Seattle to Idaho and eventually the Missouri River. F.H. Wilson, A Brief Record of the Milwaukee Road (1935). Milwaukee acquired most of the property by 37 deeds and the remaining parcels by charter from the federal government under the General Railroad Right of Way Act of 1875 (the 1875 Act).[1] Most of the deeds at issue in this case are on preprinted forms with blank lines containing handwritten descriptions of the property conveyed. The following deed from Whitman County is typical of most of the deeds at issue in this case. The underlined portions indicate the handwritten sections of the deed.
Warranty Deed
KNOW ALL MEN BY THESE PRESENTS, That Geo. D. Brown and Annie L. Brown his Wife of Spokane County, State of Washington, for and in consideration of Ten & 00/100 Dollars, to them in hand paid, the receipt whereof is hereby acknowledged, do ___ hereby convey and Warrant unto the CHICAGO, MILWAUKEE AND ST. PAUL RAILWAY COMPANY OF WASHINGTON, its successors and assigns, a strip of land, one hundred feet in width, extending over and across from the South side to the East side of the following described tract of land situated in the County of Whitman, State of Washington, and described as follows, to-wit: Southeast Quarter ¼ Section Twenty Three (23) thence to the North side of Section Twenty Four (24) and thence to the Eastside of the Southwest Quarter (¼) of the Southeast (¼) of Section Thirteen (13) all being in the Township Nineteen (19) North of Range Forty (40) E. Wm. Except such land owned by the International Land Co.....
HEREBY CONVEYING a strip, belt or piece of land fifty feet in width on each side of the center line of the Railway of said Company, as now located and established over and across said land. Also conveying the following extra widths for excavations, embankments, depositing waste earth, and borrowing pits, as follows: Two strip[s] of land each fifty (50) feet in width and bordering one on either side of the strip of land first above described and extending from station # 576 to the Eastside of the Southwest Quarter.... And said Grantors, for the consideration aforesaid, for themselves and for their heirs, assigns and legal representative, further grant ______ to said Company, its successors and assigns, the right to protect any cuts which may be made on said land, by erecting on both sides thereof, and within one hundred and fifty feet from said center line, portable snow fences....
HEREBY GRANTING AND CONVEYING to said Company, its successors and assigns, a fee simple title to said strip of land, together with all rights, privileges and immunities that might be acquired by *911 the exercise of the right of eminent domain.
. . . .
Clerk's Papers (Bailey) at 532.
Milwaukee sold the property it acquired under these deeds and charter to the State as part of reorganization proceedings instigated under § 77 of the Bankruptcy Act, 11 U.S.C. § 1174. Milwaukee instigated the proceedings in 1977 following three years of losses totaling $100 million. In re Chicago, Milwaukee, St. Paul & Pac. R.R., 611 F.2d 662, 665 (7th Cir.1979) (hereinafter cited as CMSP & P), aff'd, 624 F.2d 1105 (7th Cir. 1980).
In response to the reorganization proceedings, Congress passed the Milwaukee Railroad Restructuring Act (Restructuring Act), 45 U.S.C.A. §§ 901-922. The Restructuring Act provided short-term funding and required continuation of service on all lines until a reorganization plan was approved or Congress expressly permitted abandonment. The Restructuring Act also authorized the reorganization court to sell any of Milwaukee's rail properties as of October 15, 1979. 45 U.S.C.A. § 903(a). By April 1980, no reorganization plan had been put forward, and the reorganization court authorized immediate abandonment but ordered:
the Trustee to fully pursue all possibilities for sale of portions of these lines for continued rail operation or other public use before he disturbs any track or facilities west of Miles City, Montana, or takes any other step which would impede such sales.
Clerk's Papers (Bailey) at 494.
Unable to sell any portions of the lines for rail purposes, the trustee sought permission to sell Milwaukee's property in Adams, Kittitas and Whitman counties to the State of Washington. The reorganization court authorized the sale in December 1981 and shortly thereafter the trustee conveyed the property to the State by quitclaim deed.[2]
Following the sale, the property owners sued the State to quiet title in the property in three separate actions.[3] In Kittitas County, the superior court granted the State's motion for summary judgment, dismissing the action and quieting title in the State. Conversely, in Adams and Whitman counties, the trial courts on summary judgment found full fee title reverted to most of the property owners when Milwaukee discontinued its rail service. As to the charter parcels, which are located in Adams County, the trial court stated: "I think clearly ... what the railroad gets on charter ... is an easement that will revert when the line is abandoned." Clerk's Papers (Harder) at 413. On this issue, the trial court granted summary judgment to the property owners because it found the property reverted to them before the sale to the State.
The State appealed Bailey and Harder, and the property owners appealed Brown. The appeals were consolidated and transferred here pursuant to RAP 4.3.

ANALYSIS

Deed Parcels: Fee or Easement?
Many courts have considered whether a railroad deed conveys fee simple title or an easement. See A.E. Korpela, Annot., Deed to Railroad Company as Conveying Fee or Easement, 6 A.L.R.3d 973 (1966). The decisions are in considerable disarray and usually turn on a case-by-case examination of each deed. See Roger A. Cunningham et al., The Law of Property § 8.9, at 460 (2d ed. 1993).
In general, when construing a deed, the intent of the parties is of paramount importance and the court's duty to ascertain and enforce.[4]Swan v. O'Leary, 37 Wash.2d *912 533, 535, 225 P.2d 199 (1950); Zobrist v. Culp, 95 Wash.2d 556, 560, 627 P.2d 1308 (1981). In this case, where the original parties utilized the statutory warranty form deed and the granting clauses convey definite strips of land, we must find that the grantors intended to convey fee simple title unless additional language in the deeds clearly and expressly limits or qualifies the interest conveyed.[5]See King County v. Hanson Inv. Co., 34 Wash.2d 112, 208 P.2d 113 (1949) (words in deed must clearly indicate intent to make estate conditional); Wright v. Olsen, 42 Wash.2d 702, 257 P.2d 782 (1953) (absent limiting language, State acquired fee title to land acquired for highway purposes under statutory bargain and sale deed); see also Roeder Co. v. Burlington N., Inc., 105 Wash.2d 567, 716 P.2d 855 (1986) (deed in statutory form grants easement where additional language in the deed expressly and clearly limits or qualifies the interest granted); Veach v. Culp, 92 Wash.2d 570, 599 P.2d 526 (1979) (same). Here, with the exception of several deeds discussed later in this opinion, all of the deeds are in statutory warranty form.
In determining whether the property owners have met their burden of showing that the original parties intended to adapt the statutory form to grant easements instead of fees simple, we have relied on the following factors: (1) whether the deed conveyed a strip of land, and did not contain additional language relating to the use or purpose to which the land was to be put, or in other ways limiting the estate conveyed; (2) whether the deed conveyed a strip of land and limited its use to a specific purpose; (3) whether the deed conveyed a right of way over a tract of land, rather than a strip thereof; (4) whether the deed granted only the privilege of constructing, operating, or maintaining a railroad over the land; (5) whether the deed contained a clause providing that if the railroad ceased to operate, the land conveyed would revert to the grantor; (6) whether the consideration expressed was substantial or nominal; and (7) whether the conveyance did or did not contain a habendum clause, and many other considerations suggested by the language of the particular deed. Swan, 37 Wash.2d at 535-36, 225 P.2d 199. In addition to the language of the deed, we will also look at the circumstances surrounding the deed's execution and the subsequent conduct of the parties. Scott v. Wallitner, 49 Wash.2d 161, 162, 299 P.2d 204 (1956); see also Harris v. Ski Park Farms, Inc., 120 Wash.2d 727, 739, 844 P.2d 1006 (1993), cert. denied, 510 U.S. 1047, 114 S.Ct. 697, 126 L.Ed.2d 664 (1994).
We have given special significance to the words "right of way" in railroad deeds. In Roeder, for example, one of the deeds provided, in part, the grantor: "conveys and warrants unto Bellingham and Northern Railway Company ... for all railroad and other right of way purposes, certain tracts and parcels of land...." Roeder, 105 Wash.2d at 569, 716 P.2d 855. Recognizing a railroad can hold rights of way in fee simple or as easements, we held the deed granted an easement based on the specifically declared purpose that the grant was a right of way for railroad purposes, and there was no persuasive evidence of intent to the contrary.[6]Roeder, *913 105 Wash.2d at 574, 716 P.2d 855. We reached the same result in Morsbach v. Thurston County, 152 Wash. 562, 564, 278 P. 686 (1929) (deed granted "the right-of-way for the construction of said company's railroad in and over ..."); Swan, 37 Wash.2d at 534, 225 P.2d 199 (granted property "for the purpose of a Railroad right-of-way ..."); Veach, 92 Wash.2d at 572, 599 P.2d 526 (granted "[a] right-of-way one hundred feet wide ..."). See also Reichenbach v. Washington Short Line Ry. Co., 10 Wash. 357, 358, 38 P. 1126 (1894) ("so long as the same shall be used for the operation of a railroad" construed as granting easement); Pacific Iron Works v. Bryant Lumber & Shingle Mill Co., 60 Wash. 502, 505, 111 P. 578 (1910) (deed providing "to have and to hold the said premises ... for railway purposes, but if it should cease to be used for a railway the said premises shall revert to said grantors" grants easement not determinable fee); King County v. Squire Inv. Co., 59 Wash.App. 888, 890, 801 P.2d 1022 (1990) ("grant and convey... a right-of-way.... To Have and to Hold... so long as said land is used as a right-of-way..." grants easement), review denied 116 Wash.2d 1021, 811 P.2d 219 (1991).
These cases are consistent with the majority of cases that hold the use of the term "right of way" as a limitation or to specify the purpose of the grant generally creates only an easement. See Harris, 120 Wash.2d at 738, 844 P.2d 1006; Machado v. Southern Pac. Transp. Co., 233 Cal.App.3d 347, 284 Cal.Rptr. 560 (1991). Conversely, where there is no language in the deed relating to the purpose of the grant or limiting the estate conveyed, and it conveys a definite strip of land, the deed will be construed to convey fee simple title. Swan, 37 Wash.2d at 536, 225 P.2d 199; 65 Am.Jur.2d Railroads § 76 (1972); see, e.g., Urbaitis v. Commonwealth Edison, 143 Ill.2d 458, 159 Ill.Dec. 50, 54, 575 N.E.2d 548, 552 (1991).
There is no question Milwaukee acquired the property for railroad purposes under these deeds. Identifying the purpose of the conveyance, however, does not resolve the issue at hand because a railroad can own rights of way in fee simple or as easements. Roeder, 105 Wash.2d at 571, 716 P.2d 855; Harris 120 Wash.2d at 738, 844 P.2d 1006. Rather than identifying the purpose of the conveyances, we must conduct a deed-by-deed analysis to ascertain whether the parties clearly and expressly limited or qualified the interest granted, considering the express language, the form of the instrument, and the surrounding circumstances.
Most of the deeds expressly convey fee simple title to a definite strip of land. The property owners acknowledge the deeds expressly convey fee simple title but argue the eminent domain language in the same sentence limits the conveyance.[7] Their argument rests on the assumption railroads could acquire easements only by eminent domain at the time the deeds were issued. At the time of the conveyances, Washington statutes authorized railroads to appropriate "legal title" to land or any interest necessary for operation of the railway. Rem. & Bal.Code §§ 927, 8740 (1909). In Neitzel v. Spokane Int'l Ry., 65 Wash. 100, 117 P. 864 (1911), this court construed these statutes as authorizing a railroad to acquire only an easement.[8] The problem with the property owners' argument is Neitzel was decided after all but one of the conveyances at issue in this case. At that time, the nature of the interest *914 acquired by a railroad under the condemnation statutes was not entirely clear, given this court had held fee simple title could be acquired by cities and other entities under similarly worded condemnation statutes. See, e.g., Seattle Land & Improvement Co. v. City of Seattle, 37 Wash. 274, 79 P. 780 (1905) (City acquired fee simple interest by condemnation). Under these circumstances, what meaning the original parties to the deeds attributed the eminent domain language is not apparent. We do not, however, view the eminent domain language as a limitation because the word "together" implies a grant of additional rights, not a limitation on the interest conveyed.
In addition to the eminent domain language, the property owners argue references to "rights of way" in about half of the deeds indicate the grant of an easement. The words "right of way" can have two purposes: (1) to qualify or limit the interest granted in a deed to the right to pass over a tract of land (an easement), or (2) to describe the strip of land being conveyed to a railroad for the purpose of constructing a railway. Morsbach, 152 Wash, at 568, 278 P. 686; Harris, 120 Wash.2d at 737, 844 P.2d 1006. Unlike Swan, Veach, and Roeder, where "right of way" was used in the granting or habendum clauses to qualify or limit the interest granted, "right of way" in the deeds at issue here appears in either the legal description of the property conveyed or in the portion of the deeds describing Milwaukee's obligations with respect to the property. The Eidal deed, for example, states:
Said Railway Company ... will permit a telephone wire and an electric light wire to cross its said right-of-way.... Before grading is begun Right of way fences shall be built.... Said Railway Company is to furnish such facilities for conducting water for irrigation and other purposes under its track and across its Right-of-Way as are reasonable and practicable....
Clerk's Papers (Brown) at 27. Used in this manner, "right of way" merely describes a strip of land acquired for rail lines; it does not qualify or limit the interest expressly conveyed in the granting and habendum clauses. To point out that the Eidal deed and others describe the property as right of way simply begs the question of what interest Milwaukee acquired, because a railroad can own rights of way in fee simple if that is what the deed conveys.
The property owners also argue the "over and across" language found in the description portion of most of the deeds indicates a grant of something less than fee simple title. While the "over and across" language may be consistent with the grant of an easement, it is equally possible the parties used "over and across" simply to locate the right of way. See, e.g., Machado, 233 Cal.App.3d at 360, 284 Cal.Rptr. 560; Sowers v. Illinois Central Gulf R.R., 152 Ill.App.3d 163, 105 Ill.Dec. 76, 81, 503 N.E.2d 1082, 1087 (1987).
The amount of consideration does not indicate that the grantors intended only easements. Most of the deeds recite consideration of $10. The amount of consideration may be a factor to consider, Swan, 37 Wash.2d at 535, 225 P.2d 199, but whether the consideration actually paid in these cases represented the value of an easement or fee simple cannot be ascertained from the record.[9]
*915 Finally, the property owners rely heavily on the context in which the deeds were negotiated, speculating the grantors had little choice but to convey their property by deed given the threat of condemnation. In no way, however, did they intend to grant more than Milwaukee could have acquired through eminent domain, which the property owners claim was an easement, again citing Neitzel Assuming railroads could acquire easements only through eminent domain at this time, the property owners' interpretation may be reasonable. But equally persuasive is the State's view that the grantors welcomed the Milwaukee and sold their property absent the threat of condemnation. See Ira A. Nadeau, Railroad Situation in Washington, Wash. Magazine, Apr. 1906, at 2 ("The coming of the railroads made the settlement of the greater portion of our state possible"); State Roads Comm'n v. Johnson, 222 Md. 493, 161 A.2d 444, 446 (1960) ("It is an historical fact that the construction of the pioneer B. & O. railroad was a highly favored enterprise..."). In any event, we are reluctant to accord the context in which the deeds were negotiated much weight, given the uncertainty as to what a railroad could acquire by eminent domain before Neitzel, and the failure of either party to develop the record on this point.
Weighing the factors outlined in Swan, we conclude construing the deeds to convey fees simple more accurately reflects the intent of the parries, given the form of the deeds and the fact they convey "fee simple title" to definite strips of land given without any limitation or qualification. While the manifest purpose of the deeds is to convey land for railroad lines, railroads have never been prohibited from holding rights of way in fee simple. Morsbach, 152 Wash, at 575, 278 P. 686. In the absence of language in the deeds expressly and clearly limiting the estate conveyed, the deeds fall squarely within the rule that where there is no language in a deed relating to the purpose of the grant or limiting the estate conveyed, and it conveys a definite strip of land, it will be construed to convey fee simple title. See Swan, 37 Wash.2d at 536, 225 P.2d 199.
We previously noted that most of the deeds are identical to the Whitman County deed set forth earlier in this opinion except as to the handwritten legal descriptions. There are, however, several deeds that differ from the Whitman County deed. We hold these deeds convey fee simple title because, unlike Swan, Veach, and Roeder, they convey definite strips of land without any limitation or qualification.
Specifically, several of the deeds are in the form of indentures. Because they convey definite strips of land and nowhere specify that the purpose of the conveyance is for a right of way, we hold they conveyed fee simple title to Milwaukee.
The Simpson deed is captioned "Right of Way Deed." The deed is in statutory form and conveys a definite strip of land, but does not expressly convey fee title. Because the purpose of the conveyance is not limited, we hold the deed conveyed fee simple title regardless of the caption.
The Baker Loan & Investment Company deed does not expressly convey fee simple title but is in statutory form. Because the conveyance is not limited, and the consideration is substantial ($1,310), we hold the deed conveys fee simple title.
The Northern Pacific Railway Company deed is a bargain and sale deed. A bargain and sale deed is a statutory deed that is deemed to convey fee simple title. Rem. & Ball.Code § 8748 (1909). The McCall deed, captioned "Quit Claim Deed," is part of this conveyance. It is substantially similar to the Kittitas County deeds. Both deeds convey fee simple title.
The Milwaukee Land Company deed is captioned "Warranty Deed" and is in the form of a bargain and sale deed. Because there is no limiting language, we construe the deed as conveying fee simple title.

Charter Parcels
Next we consider the property owners' claim that the property Milwaukee acquired *916 by charter under the 1875 Act reverted to them under 43 U.S.C.A. § 912.[10]
Under the 1875 Act, railroads acquired less than fee simple estates, leaving the federal government with a reversionary interest. In the 1920's, Congress partially divested the federal government of its reversionary interest by granting the reversionary interest to the owner of the legal subdivision previously traversed by the right of way. 43 U.S.C.A. § 912; Marshall v. Chicago & Northwestern Transp. Co., 31 F.3d 1028, 1031 (10th Cir. 1994); see also City of Buckley v. Burlington N. R.R. Corp., 106 Wash.2d 581, 723 P.2d 434 (1986). In this case, the property owners claim the reversionary interest as owners of the legal subdivision previously traversed by the railroad.
Whether the reversionary interest vests in the adjoining landowner is governed by 43 U.S.C.A. § 912. State v. Oregon Short Line R.R. Co., 617 F.Supp. 207 (D.Idaho 1985). Section 912 provides in pertinent part:
Whenever public lands of the United States have been or may be granted to any railroad company for use as a right of way for its railroad ... and use and occupancy of said lands for such purposes has ceased or shall hereafter cease ... by abandonment by said railroad company declared or decreed by a court of competent jurisdiction or by Act of Congress, then and thereupon all right, title, interest, and estate of the United States in said lands shall, except such part thereof as may be embraced in a public highway legally established within one year after the date of said decree or forfeiture or abandonment be transferred to and vested in any person, firm, or corporation, assigns, or successors in title and interest to whom or to which title of the United States may have been or may be granted, conveying or purporting to convey the whole of the legal subdivision or subdivisions traversed or occupied by such railroad ... except lands within a municipality the title to which, upon forfeiture or abandonment ... shall vest in such municipality.... Provided, That this section shall not affect conveyances made by any railroad company of portions of its right of way if such conveyance be among those which ... may ... before such forfeiture or abandonment be validated and confirmed by any Act of Congress; ....
43 U.S.C.A. § 912 (emphasis added).
The State argues this case hinges on the application of the proviso; if the trustee's sale of the charter parcels to the State pursuant to the Restructuring Act constituted a conveyance "validated and confirmed by any Act of Congress," then the State has superior title. The property owners argue the proviso is irrelevant because the sale took place after the reorganization court authorized immediate abandonment on April 2, 1980. We hold the reversionary interest never vested in the adjoining property owners in this case because Congress had expressly authorized Milwaukee to sell the rights of way for nonrailroad purpose, and moreover, a court of competent jurisdiction had never declared abandonment as required by this statute.
The Restructuring Act delegated congressional power to the reorganization court to approve "agreements to sell, to another rail carrier or any other person, all or any portion of its rail properties used in railroad operations as of October 15, 1979." 45 U.S.C.A. § 903; see also In re Chicago, Milwaukee, St. Paul & Pac. R.R., 701 F.2d 604 (7th Cir.) (Restructuring Act transferred authority over sales of Milwaukee's lines from the Interstate Commerce Commission to the reorganization court), cert. dismissed, 463 U.S. 1233, 103 S.Ct. 3574, 77 L.Ed.2d 1416 (1983). Because Congress validated and confirmed the sale of property, the parties agree that the only issue related to § 912 is whether abandonment occurred after Milwaukee sold the property to the State.
In order for reversionary rights to vest under 43 U.S.C.A. § 912, the railroad must (1) cease "use and occupancy" of the rights of way, and (2) abandonment must be "declared or decreed" by a court of competent jurisdiction or a congressional act. Vieux v. East *917 Bay Regional Park Dist., 906 F.2d 1330, 1337 (9th Cir.) (citing Oregon Short Line, 617 F.Supp. at 216, 218), cert. denied, 498 U.S. 967, 111 S.Ct. 430, 112 L.Ed.2d 414 (1990); Barney v. Burlington N. R.R., Inc., 490 N.W.2d 726, 731 (S.D.1992), cert. denied, 507 U.S. 914, 113 S.Ct. 1265, 122 L.Ed.2d 661 (1993).
The Restructuring Act authorized the reorganization court to "authorize" abandonment of Milwaukee's lines as of April 1, 1980. 45 U.S.C.A. §§ 904, 915(a). On April 2, the reorganization court found "[t]he best interests of the estate require immediate authorization of this abandonment...." Clerk's Papers (Bailey) at 492. But, it directed the trustee "to fully pursue all possibilities for sale of portions of these lines for continued rail operation or other public use before he disturbs any tracks or facilities west of Miles City, Montana...." Clerk's Papers (Bailey) at 494. In its application to sell the property at issue to the State, the trustee stated:
The property to be sold is a portion of the property authorized for abandonment in the Lines West abandonment proceeding covered by Order Nos. 307 and 307-A in April of 1980. Salvage contracts have already been let for the removal of the trackage, which remains in place only in two segments aggregating about 95 miles in length. The Trustee will reserve the right to enter upon the property for the purpose of removing the track materials until December 1, 1982, which is the deadline under the salvage contracts for removal of the trackage.
Clerk's Papers (Bailey) at 499.
By the time of the sale, then, "use and occupancy" of the rights of way had apparently ceased, and the reorganization court had authorized abandonment conditioned on the trustee making every effort to sell the property to another rail carrier or for public use. However, authorizing conditional abandonment and declaring a railway abandoned are two separate acts. Here, no court of competent jurisdiction has declared or decreed the railways abandoned even though abandonment has been authorized. See Vieux, 906 F.2d at 1337. As a result, the proviso applies. Moreover, "easements" on public lands are granted by Congress and subject to the intentions and specifications of Congress rather than common law. Oregon Short Line, 617 F.Supp. at 212; Barney, 490 N.W.2d at 730. Because Congress authorized the sale of Milwaukee's rights of way for nonrailroad uses under 43 U.S.C.A. § 912, we hold Congress intended the reversionary interest to vest in the purchaser of the right of way rather than the owner of the abutting property.

CONCLUSION
In these consolidated cases, the deeds conveyed land rather than use of a right of passage over land. Thus, we hold Milwaukee acquired fees simple in the deed parcels which the State acquired by purchase. Because abandonment has not been declared by a court of competent jurisdiction or a congressional act, no reversionary interests in the charter parcels vested. We affirm the trial court's order granting summary judgment in Kittitas County and reverse the trial courts in Adams and Whitman counties and remand with directions to grant summary judgment to the State.
DOLLIVER, SMITH, TALMADGE, GUY and MADSEN, JJ., concur.
ALEXANDER, J., concurs and dissents with opinion.
SANDERS, J., dissents and concurs with opinion.
SANDERS, Justice (dissenting in part, concurring in part).
If this court is to adhere to its time-honored and unquestioned rule that "the intention of the parties to the conveyances is of paramount importance and must ultimately prevail in a given case," Harris v. Ski Park Farms, Inc., 120 Wash.2d 727, 738, 844 P.2d 1006 (1993) (citing Swan v. O'Leary, 37 Wash.2d 533, 225 P.2d 199 (1950)), cert. denied, 510 U.S. 1047, 114 S.Ct. 697, 126 L.Ed.2d 664 (1994), we must yield to the necessary legal conclusion that the parties to these transactions intended to convey that which was necessary to permit the construction *918 and operation of a railroadan easement. Accordingly, I would affirm the judgment of the learned trial courts in Adams and Whitman[1] counties, reverse the Kittitas County summary judgment, and dissent from the unprecedented majority opinion of this court (except as to the charter parcels).
We are presented with a mixed question of fact and law. The intent of the parties is the factual part of the question. Harris, 120 Wash.2d at 738, 844 P.2d 1006 (citing Veach v. Culp, 92 Wash.2d 570, 573, 599 P.2d 526 (1979)); Roeder Co. v. Burlington N., Inc., 105 Wash.2d 567, 572, 716 P.2d 855 (1986). The search for intent is illuminated by three factors: (1) deed language, (2) circumstances surrounding the execution of the deed, and (3) the subsequent conduct of the parties. Scott v. Wallitner, 49 Wash.2d 161, 162, 299 P.2d 204 (1956). The consequence of this intent is the legal question.
The factual question is: Was it the intention of the parties to convey a right to use the land for the purpose of operating a railroad, or was it, on the other hand, their intent to convey an absolute fee title. Scott, 49 Wash.2d at 162, 299 P.2d 204 (citing Morsbach v. Thurston County, 152 Wash. 562, 278 P. 686 (1929); Swan v. O'Leary, 37 Wash.2d 533, 225 P.2d 199 (1950); A.M.S., Annotation, Deed to Railroad Company as Conveying Fee or Easement, 132 A.L.R. 142 (1941)). Curiously, the majority aptly and accurately discerns the fundamental intent of these parties: "There is no question Milwaukee acquired the property for railroad purposes under these deeds," Majority Op. at 913, and "the manifest purpose of the deeds is to convey land for railroad lines....", Majority Op. at 915. Ultimately this fact should resolve the case because if it was the intent of the parties to convey what was necessary for a railroad line, all that was needed was an easement. But by its holding the majority benefits the railroad more than its intended gain and takes from the landowner more than his intended conveyance. This does not fulfill the intention of the parties; it defeats it.
The majority mistakenly switches to the wrong track because these deeds are generally statutory in form. It opines: "[W]here the original parties utilized the statutory warranty form deed and the granting clauses convey definite strips of land, we must find that the grantors intended to convey fee simple title unless additional language in the deeds clearly and expressly limits or qualifies the interest conveyed." Majority Op. at 912. It sees support for this alleged rule in King County v. Hanson Inv. Co., 34 Wash.2d 112, 208 P.2d 113 (1949); Wright v. Olsen, 42 Wash.2d 702, 257, P.2d 782 (1953); Roeder Co. v. Burlington N., Inc., 105 Wash.2d 567, 716 P.2d 855 (1986); and Veach v. Culp, 92 Wash.2d 570, 599 P.2d 526 (1979) and purports to briefly summarize the holding in each of these cases after their citation. I do not agree with their characterization of these cases, and I strongly disagree that precedent holds the utilization of a statutory warranty deed format, in a railroad deed situation, raises some sort of a presumption that a fee title has been conveyed. As a matter of fact, a long, narrow, definite strip of land more likely represents an easement than a fee, see, e.g., Hanson, 34 Wash.2d at 123-25, 208 P.2d 113; Morsbach, 152 Wash, at 573-74, 278 P. 686 (citing Killgore v. Cabell County Court, 80 W.Va. 283, 92 S.E. 562 (1917)), as easements for railroad rights of way are almost always "strips of land" whereas fee parcels are usually more regularly shaped and large enough to suit a nonrailway purpose.
Neither Hanson nor Wright involved a conveyance to a railroad company. In Hanson the court held the deed granting land for a public park to be ambiguous, but the plat filed by the landowner clearly indicated his intent that the tract be dedicated to the county for a public park because it involved a triangular tract (not just a strip of land suitable for a highway easement). Hanson, 34 Wash.2d at 125-26, 208 P.2d 113. In Wright the court found the state acquired the fee in land by a deed "in plain and unambiguous terms" and that the statutes provide that the state cannot be divested of *919 title by abandonment. Wright, 42 Wash.2d at 703-04, 257 P.2d 782 (citing Rem.Rev.Stat. §§ 6829-1, -2 (1926); RCW 47.12.060, .070 (1945)). This is nearly the opposite rule from that posited by the majority: it is an easement unless clearly it is not. See also Roeder, 105 Wash.2d at 572, 716 P.2d 855.
Railroad deeds are unique in that they are an exception to the general rule that a deed in statutory warranty or quitclaim form passes full fee title. On many prior occasions this court has held that a railroad deed in the form of a statutory warranty deed passes only an easement, and nothing more. Morsbach, 152 Wash. at 565-69, 278 P. 686; Roeder, 105 Wash.2d at 572, 716 P.2d 855 (citing Veach, 92 Wash.2d at 574, 599 P.2d 526).
Where the deed language sends mixed signals, we follow the easement track, not the fee. 17 William B. Stoebuck, Washington Practice, Real Estate: Property Law § 7.9, at 464 (1995) ("[T]he Washington decisions involving disputed language seem to favor the granting of an easement, though they do not say so in so many words."); King County v. Squire Inv. Co., 59 Wash.App. 888, 893, 801 P.2d 1022 (1990) ("Previous Washington cases show a strong tendency to construe such rights of way as easements."), review denied 116 Wash.2d 1021, 811 P.2d 219 (1991); cf. Swan, 37 Wash.2d at 536, 225 P.2d 199 (where the deed is a mixture of two ideas the easement conclusion follows). The black letter rule in this jurisdiction states:
[I]t is elementary that, in cases where the granting clause of a deed declares the purpose of a grant to be a right of way for a railroad, the deed passes an easement only, not a fee, though it be in the usual form of a full warranty deed. 1 Thompson on Real Property, § 421.
Morsbach v. Thurston County, 152 Wash. 562, 565, 278 P. 686 (1929) (emphasis added). The search for intent ends when the purpose is found. This rule is firmly established and has been consistently followed from Morsbach in 1929 to Harris in 1993. About this there can be no doubt. See Harris, 120 Wash.2d at 727, 738, 844 P.2d 1006. Likewise it is also the rule followed in many other jurisdictions. See A.E. Korpela, Annotation, Deed to Railroad Company as Conveying Fee or Easement, 6 A.L.R.3d 973, 984-90 (1966).
The majority in essence defeats the common sense of this rule of intent by holding an easement is not created unless the magic words "right of way" are contained in the "granting clause." See Sherman v. Petroleum Exploration, 280 Ky. 105, 132 S.W.2d 768, 132 A.L.R. 137 (1939); 189 Kan. 536, 370 P.2d 419, 6 A.L.R.3d 962-1039 (1962). However, Morsbach does not narrowly define "granting clause" nor does it require the right of way purpose be expressed in any particular words. The deeds in this case each have multiple granting clauses as each clause further describes the actual scope of the grant, not just the first clause. The last clause, which mentions fee simple title together with that which might be acquired through eminent domain, is also a granting clause. Morsbach, 152 Wash, at 566, 278 P. 686 (granting clause includes description of property conveyed). Motive, purpose, and intent are not necessarily the same; however, normally they are consistent and closely related. Where the purpose is right of way, the inference follows that it was the intent of the parties to grant what is necessary to accomplish that purpose. Here, an easement.
In Morsbach this court rejected a similar argument made by the county that the granting clause of the deed did not include the words "right of way ... for the construction of ... [a] railroad...." The court held: "But the appellant delimits the supposed granting clause too much. The granting clause must also include the property conveyed, so that it may be identified." Id. at 566, 278 P. 686.
The majority ignores the ultimate reason for this inquiry (was it the intention of the parties to convey a right to use the land for the purpose of operating a railroad, or was it, *920 on the other hand, their intent to convey an absolute fee title)[2] by ignoring the established rule of construction in such cases that the intention of the parties, insofar as the same can be determined from the face of the deed, must be gleaned from the entire instrument,[3] not a particular word or phrase placed here or there, or the absence thereof. As we said in Roeder, "The particular purpose for which the land was being conveyed was thus emphasized throughout the deed." Roeder, 105 Wash.2d at 573, 716 P.2d 855.
The majority continues down the wrong track by giving "special significance to the words `right of way' in railroad deeds," Majority Op. at 912, finding the absence of these precise words in these deeds overpowering in significance. However significant to the majority, no reason is advanced why its absence should have been significant to the parties to the original deeds. But it is the intent of the parties which should control. There are different ways to express the same intent.
Morsbach relies heavily upon Thompson on Real Property for the basic rule in such situations, as here, where the railroad is afforded a private right of eminent domain to aid its right of way acquisitions:
A grant of a right of way to a railroad company is the grant of an easement merely, and the fee remains in the grantor.... It is held that a deed conveying land to a railroad for a right of way gives the railroad no more rights than it would have acquired by condemnation.... 1 Thompson on Real Property, § 420.
Morsbach, 152 Wash. at 574, 278 P. 686.
While the deed in Morsbach contained the words "right of way," and those specific words do not appear in the deeds considered in this case, there is no doubt that the purpose of the conveyance was for operation of a railroad only, and all Washington cases[4] construing deeds to railroad companies executed in the early 1900s have found easements, regardless of form.
Unless we are to disregard Judge Learned Hand's admonition that we should not "make a fortress out of the dictionary,"[5] I suggest we fulfill the intention of the parties to these early nineteenth century deeds, not fault farmers for not rewriting the preprinted deeds drafted by the railroad as we think Philadelphia lawyers might.
The majority cites "Annot., Deed to Railroad Company as Conveying Fee or Easement, 6 A.L.R.3d 973 (1966)," Majority Op. at 911, but does not discuss the principal case in the annotation, Harvest Queen Mill & Elevator Co. v. Sanders, 189 Kan. 536, 370 P.2d 419, 6 A.L.R.3d 962 (1962). That case is especially significant because it follows a long line of consistent cases back to Abercrombie v. Simmons, 71 Kan. 538, 81 P. 208 (1905) as did the leading Washington case, Morsbach. Abercrombie is the mother of all railroad cases in both jurisdictions. Sanders faithfully follows Abercrombie and summarizes the general rule that railroad rights of way are easements, unless the deed clearly, unambiguously, and absolutely indicates otherwise.[6]
*921 The deed in Sanders was very similar in form to the deeds here. The words "right of way" did not appear anywhere. The reference to the purpose of the grant, construction, and operation of a railroad does not appear the grant of the land itself, but only after the word "together" in the section authorizing the railroad to encroach on other land owned by the grantor. This is analogous to the deeds in our present case which grant "`a fee simple title to said strip of land, together with all rights, privileges and immunities that might be acquired by the exercise of the right of eminent domain.'" Majority Op. at 910 (quoting Clerk's Papers (Bailey) at 532).
Rejecting basically the same arguments which the majority accepts here, the Kansas Supreme Court repaired to the fundamental guiding principle and its reason.
We have held that when land is devoted to railroad purposes it is immaterial whether the railway company acquired it by virtue of an easement, by condemnation, right-of-way deed, or other conveyance. If or when it ceases to be used for railway purposes, the land concerned returns to its prior status as an integral part of the freehold to which it belonged prior to its subjection to use for railway purposes. This court has uniformly held that railroads do not own fee titles to narrow strips [of land] taken as right-of-way, regardless of whether they are taken by condemnation or right-of-way deed. The rule is in conformity with this state's long-standing public policy and gives full effect to the intent of the parties who execute right-of-way deeds rather than going through lengthy and expensive condemnation proceedings. [Citing Abercrombie v. Simmons, 71 Kan. 538, 81 P. 208 (1905), other citations omitted.]
Sanders, 189 Kan. at 541-42, 370 P.2d at 423 (emphasis added).
To summarize, the intent of the parties is controlling as to whether the parties intended to grant a railroad right of way or transfer a fee title. The evidence of that intent is derived from (1) deed language taken as a whole, (2) circumstances surrounding the execution of the deed, and (3) the subsequent conduct of the parties. While the majority concedes, as it must, the purpose of this conveyance was to convey a railroad right of way based upon these enumerated factors, the majority derails when it claims identifying the purpose of the conveyance does not resolve the issue:
There is no question Milwaukee acquired the property for railroad purposes under these deeds. Identifying the purpose of the conveyance, however, does not resolve the issue at hand because the railroad can own rights of way in fee simple or as easements. Roeder, 105 Wash.2d at 571, 716 P.2d 855; Harris, 120 Wash.2d at 738, 844 P.2d 1006.
Majority Op. at 913. While Roeder and Harris do indeed stand for the proposition that a railroad can own rights of way in fee simple or as easements (as do Abercrombie and Sanders), neither case supports the purported proposition that "identifying the purpose of the conveyance, however, does not resolve the issue...." Majority Op. at 913 (emphasis added). Of course it does. Morsbach clearly holds a deed to a railroad should be "construed as a whole and in the light of the purpose for which it was made...." Morsbach, 152 Wash, at 567, 278 P. 686. If there were nothing in the deed to suggest that the grant of this strip of land was for the purpose of constructing a functioning railroad, then the majority might have an argument. However, where it follows from language in the deed and/or extrinsic circumstances that the conveyance was for right of way purposes, the conveyance is construed as an easement because only an easement is necessary to fulfill that purpose. Were it the intent of the parties to grant a fee, the deed would have simply done so without reference to a railroad use, or eminent domain.
Is not that the "intent" we seek to determine? If the majority is not looking for the intended purpose of the conveyance, what is it looking for? I'm sure farmer Brown wouldn't understand the majority's logic on this point.
*922 As the majority itself admits, the evidence of intent to transfer the appropriate property interest for the purpose of a railroad right of way is quite overwhelming whether that purpose (or intent) be discerned from the deed language, the circumstances surrounding the execution of the deed, or the subsequent conduct of the parties.
Most of these deeds are on preprinted forms drafted by the railroad. The railroad was a sophisticated, well financed, and organized party, undoubtedly represented by counsel. Landowners stood at a disadvantage to railroads in the early 1900s. It approached the landowners to purchase their land after it had already laid out or even built its rail line over the land.[7]See A.E. Korpela, Annotation, Deed to Railroad Company as Conveying Fee or Easement, 6 A.L.R.3d 973, 1034-1038 (1966) (citing Gates v. Missouri, K. & T. Ry., 13 F.Supp. 466 (W.D.Okla.1934) (deed in lieu of condemnation conveys a fee); Highland Realty Co. v. City of San Rafael, 46 Cal.2d 669, 298 P.2d 15 (1956) (where railway built before the conveyance in lieu of condemnation proceeding, it is an easement)). The railroad and the landowners knew that the railroad possessed the power of eminent domain and would end up in possession of the right of way, if it were not already. These were not arm's-length transactions between parties of equal bargaining power. For these reasons, the deeds, at least the preprinted portions of them, must be construed against the railroad. "[C]ontract language ... is construed most strongly against the party who drafted it, or whose attorney prepared it." Guy Stickney, Inc. v. Underwood, 67 Wash.2d 824, 827, 410 P.2d 7 (1966) (citations omitted). "[A] deed reference to a `right of way' for road or railway purposes is usually construed as conveying only an easement, since most rights of way are indeed easements." Roger A. Cunningham et al., The Law of Property § 11.1, at 718 (1984). "[T]he wise drafter [here, the railroad] will make clear what sort of interest is intended." Id. at 718.[8] Construing these deeds against the drafter buttresses the easement conclusion.
The deeds taken together also evidence multiple acquisitions of interests in contiguous parcels, suggesting a railroad use consistent with an easement, but inconsistent with a fee title normally associated with larger parcels for forest land, orchards, or hotels. Compare Swan, 37 Wash.2d at 536, 225 P.2d 199 (adjacent right of way indicative of extension). The actual consideration[9] is nominal, e.g., $10.00. This is more consistent *923 with the lesser estate of an easement than the greater fee estate. Of course the grantee of the deed is a railroad company, and, for the most part, railroad companies operate railroads. The property itself is "`a strip of land, one hundred feet in width....'" Majority Op. at 910 (quoting Clerk's Papers (Bailey) at 532). This is consistent with a railroad use and inconsistent with other uses. Compare King County v. Hanson Inv. Co., 34 Wash.2d 112, 208 P.2d 113 (1949) (where a fee title was found in part because it was a large triangular-shaped parcel of property, not a narrow strip of land). See Majority Op. at 912. The deeds generally reference "over and across." This language is certainly indicative of a railroad right of way and inconsistent with an absolute fee which would convey, for example, the mineral rights as well, which are not "over," but "under."
Were this not enough, the deeds actually define the land grant in terms of "`fifty feet in width on each side of the center line of the Railway of said Company, as now located and established over and across said land.'" Majority Op. at 910 (quoting Clerk's Papers (Bailey) at 532). Railway means railway, not trail. The deeds mention "`extra widths for excavations, embankments, depositing waste earth, and borrowing pits...., the right to protect cuts which may be made on the land..., [and] the right to erect and maintain portable snow fences....,'" etc., all of which unmistakably indicate a railroad use. Id.
To view this from another perspective, is it reasonable to believe these parties intended any use but a railroad given the language of the deed?
Finally the deeds also grant "`a fee simple title to said strip of land, together with all rights, privileges and immunities that might be acquired by the exercise of the right of eminent domain.'" Id. Although this reference to a fee title could be consistent with a determinable fee (which terminates upon railroad abandonment and yields the same result as an easement upon abandonment), see Morsbach, 152 Wash, at 568, 278 P. 686, the great weight of authority does not make the reference to the fee title dispositive in any event. See King County v. Squire Inv. Co., 59 Wash.App. 888, 892-94, 801 P.2d 1022 (1990), review denied, 116 Wash.2d 1021, 811 P.2d 219 (1991).
However, the reference to eminent domain is a very important indication of right of way intent.
First, there would be no reason for the reference, and these words would be mere surplusage, if it were the intent of these parties to simply grant the railroad an absolute fee title. There is nothing which could be added to an absolute fee estate by eminent domain beyond that which is not already there.
Second, the reference to eminent domain infers this deed was given in lieu of that which could be acquired through eminent domain, i.e., only an easement. The fact that the railroad laid out or even built the railway over and across the land before acquiring title shows that they intended to take by eminent domain or the threat thereof. This conclusion is not changed by the fact that Neitzel v. Spokane Int'l Ry., 65 Wash. 100, 117 P. 864 (1911) was decided shortly after these deeds were executed and appears to be the first definitive holding from the Washington State Supreme Court to that effect. Neitzel did not purport to announce a new principle of law but to recognize an existing one. Washington Constitution Article I, section 16 (amend. IX), from the date of its adoption in 1889, as well as the uniform law in virtually every other state jurisdiction, all predating these deeds, held railroads might acquire easements only by eminent domain. Neitzel, 65 Wash, at 110-11, 117 P. 864.
There is a reason railroads may acquire only an easement, not a fee title, by eminent domain. The reason is that an easement (or determinable fee) is all that is necessary for the railroad to accomplish its public purpose. The seizure of more than that which is necessary to accomplish a public purpose is prohibited by the Washington Declaration of Rights, Wash. Const. art. I, § 16. The railway could have obtained a right of way easement for railroad purposes through exercise of its eminent domain power but it could not have obtained a fee. (Nor could it have obtained any interest in land for use as a recreational trail through eminent domain.) Once again, this express reference to eminent domain is indicative of an intent to grant a railroad right of way by easement rather than an absolute fee. Additionally, it *924 is also an extrinsic circumstance even absent the express deed reference.
Aside from the actual language of the deed, other factors seem almost self-evident in their implication of railroad right of way intent. The "circumstances surrounding the execution of the deed" include buying up many similar parcels of land for a railroad right of way on preprinted railroad deed forms, often using the same Seattle notary who apparently traveled to the landowners with the railroad agent. Clerk's Papers (Bailey) at 742. Of course the subsequent conduct of the parties is precisely what one would expect from a right of way intention: construction and use of a railroad line.
The majority claims property owners were more interested in the benefits of rail service than obtaining fair value for their property. I doubt that, since one probably enjoys railroads more if they go across someone else's land. However even if the majority's point was well taken, property owners have now been deprived of the benefit of rail service by the railroad's abandonment of the line. In the State's hands all these property owners have left to look forward to are interlopers building campfires and leaving behind their trash, easy access to trespassers, and loss of personal privacynot benefits from rail service. If these deeds granted a fee, the motive, purpose, and intent for granting that fee vanished when the tracks were torn up. But if an easement was granted the property reverts upon abandonment to the landowner and there is no problem. If so, farmer Brown was not so dumb after all.
Would farmer Brown have sold his property to this railroad in fee simple absolute for $10.00 if (1) the property were to be used for a public trail, not rail, and (2) the railroad would not have been able to forcibly acquire the property by eminent domain absent farmer Brown's consent?
I do not here dwell on the specifics of the other deeds and transactions, finding my divergence from the majority miles up the track from these specifics. Suffice it to say that appropriately defined principles will yield the same result in each case.
I do, however, concur in the result that fee simple absolute title to the so-called "charter parcels," the former railroad rights of way, is vested in the State of Washington, but write separately to briefly state the essence of the holding.
Unlike the other "deed parcels" at issue in this case, these narrow strips of land underlying the former railroad rights of way were never a part of the adjoining property owners' (abutters') chain of title. Their only claim to the land is under a statute, 43 U.S.C.A. § 912, passed by Congress, which in effect made a conditional promise of a future gift to abutters. That condition, a declaration of abandonment of the railroad right of way by Congress or a court, never occurred. Abandonment in fact (non-use) and a declaration of abandonment are two very different legal statuses. In the Milwaukee Railroad Restructuring Act, 45 U.S.C.A. §§ 901-922, Congress prevented the condition from ever occurring by authorizing a sale prior to any declaration of abandonment. Alternatively, this act could be viewed as a partial repeal of 43 U.S.C.A. § 912, which authorized the gift, at least with respect to these particular rights of way. Either way, abutters acquired no vested rights in the land and no title to the charter parcels. What Congress promised to give abutters with one hand, it took away with the other. Congressional improvidence, if any, is beyond the power of this court to remedy. But fulfillment of private intent is our charge.
ALEXANDER, Justice (concurring in part, dissenting in part).
I concur with the decision of the majority that all of the deeds before us purporting to convey fee simple title do exactly that. I also agree with its determination that other deeds which do not contain language indicating a conveyance of fee simple, but which purport to convey specific tracts of land without restriction on the use of the conveyed land, also convey fee simple title. I disagree with the majority only with respect to its determination of the effect of one deed, that from George Simpson to the Milwaukee Railroad, dated May 4, 1907. In my judgment, that deed conveyed only an easement. I, therefore, dissent in part.
*925 Most of the deeds, as the majority notes, expressly convey fee simple title with no limitation on the use of the Inland. I readily agree with the majority that those deeds convey fee simple title. The majority also correctly observes that "where there is no language in the deed relating to the purpose of the grant or limiting the estate conveyed, and it conveys a definite strip of land, the deed will be construed to convey fee simple title." Majority op. at 913. Finally, it correctly recognizes that where a deed indicates that the grantor intends to convey to the grantee "a right of way for railroad purposes," an easement is created even if the deed is in the form that usually conveys fee title. Majority op. at 912; Swan v. O'Leary, 37 Wash.2d 533, 537, 225 P.2d 199 (1950).
Applying the aforementioned principles, it is apparent that the deed from Simpson to the Milwaukee Railroad, unlike the other deeds at issue in the case, does not convey a fee simple estate. Rather, it conveys an easement. I reach that conclusion for several reasons. First, the deed does not expressly indicate that fee simple title is being conveyed. Second, it is captioned a "Right of Way Deed," and it purports only to convey a strip of land "over and across" a much larger tract of land. Clerk's Papers at 561. Significantly, the deed contains language, not present in the other deeds before us, that the grantor, Simpson, released all damage claims "occasioned by the location, construction, maintenance and operation of a Railway over and upon the premises hereby conveyed." Clerk's Papers at 561. This language lends support to the argument that Simpson intended to convey only a right of way for railroad purposes.
While the majority acknowledges that language such as that in the Simpson deed can be construed as creating an easement, it concludes that because the deed did not limit the purpose of the conveyance, it "conveyed fee simple title regardless of the caption." Majority op. at 915. I disagree. In my judgment, the captioning of the deed as a Right of Way deed, the lack of any mention that a fee simple estate is conveyed, and the other language in the deed relating to relinquishment of any damage claims relating to the operation of a railway indicate an intention to convey nothing more than an easement.
NOTES
[1] Ch. 152, § 1, 18 Stat. 482 (current version at 43 U.S.C.A. §§ 934-939). The 1875 Act granted "right[s] of way through the public lands of the United States" where rail lines were already located or over which lines would be built in the future. 43 U.S.C.A. § 934.
[2] The State paid $1.9 million for Milwaukee's railways in Adams, Kittitas, Whitman, Spokane, and Grant counties.
[3] Bailey v. State, No. 88-2-00205-1 (Whitman County filed Dec. 22, 1988); Brown v. State, No. 88-2-00118-1 (Kittitas County filed May 5, 1988); Harder v. State, No. 88-2-00137-9 (Adams County filed Dec. 16, 1988).
[4] Since we are reviewing summary judgments, we apply the same standard as the trial court. Hartley v. State, 103 Wash.2d 768, 774, 698 P.2d 77 (1985). In this case, where both parties have agreed no material facts are in dispute, the only issue is a question of law. Department of Labor & Indus. v. Fankhauser, 121 Wash.2d 304, 308, 849 P.2d 1209 (1993).
[5] Since before statehood, the Legislature has provided that deeds patterned after state statute are deemed to convey fee simple tide and carry certain warranties. The territorial Legislature first provided every deed in the following form is deemed to convey fee simple tide:

The grantor (here insert the name or names and place of residence,) for and in consideration of (here insert consideration), in hand paid, convey and warrant to (here insert the grantee's name or names), the following described real estate (here insert description), situated in the county of ______, state of Washington.
Dated this ___ day of ___, 18 ___. ___ ___. (Seal)
Laws of 1886, § 3, pp. 177-78. This law was codified at Rem. & Ball.Code § 8747 (1909) and presently as RCW 64.04.030. The statutory form alleviated drafting and interpretation problems manifest under the prior system, especially in cases like this where the parties to the deeds are deceased and the evidence consists solely of the deeds themselves. This form is now universally used and relied upon. 17 William B. Stoebuck, Wash. Practice, Real Property § 7.2 (1995).
[6] The court quoted Swan, 37 Wash.2d at 537, 225 P.2d 199:

[W]hen the granting clause of a deed declares the purpose of the grant to be a right of way for a railroad the deed passes an easement only, and not a fee with a restricted use, even though the deed is in the usual form to convey a fee tide. Roeder, 105 Wash.2d at 572, 716 P.2d 855.
[7] "HEREBY GRANTING AND CONVEYING to said Company, its successors and assigns, a fee simple tide to said strip of land together with all rights, privileges and immunities that might be acquired by the exercise of the right of eminent domain." Clerk's Papers (Brown) at 39 (emphasis added).
[8] Strictly construing the condemnation statute, the court held that fee tide would not vest in a condemning corporation unless the statute that authorizes condemnation expressly authorizes the corporation to acquire fee tide. Because Rem. & Bal.Code § 927 (1909) referred only to "legal title," the railroad could only acquire an easement. Neitzel, 65 Wash, at 107, 117 P. 864. Neitzel followed the generally recognized rule that a railroad could not hold fee simple tide to land acquired by eminent domain absent specific statutory authority. 1 Philip Nichols, The Law of Eminent Domain § 192 (2d ed. 1917); 26 Am. Jur.2d Eminent Domain § 137 (1966).
[9] Several of the deeds reserve or except the right of the grantor to make some use of the land conveyed. For example, in the Wold deed, the grantors conveyed "fee simple tide to said strip of land except as to rights of owners of [i]rrigation ditch...." Clerk's Papers (Brown) at 30. In the Wilson deed, the grantors conveyed fee simple title "except" a mineral reservation. In addition, Milwaukee agrees to maintain farm crossings or other improvements in many of the deeds. The reservation or exception of mineral or irrigation rights is consistent with the conveyance of a fee; it would not have been necessary to reserve such rights had the parties intended an easement because the grantors would have retained use of the land. See Nature Conservancy v. Kolb, 313 Ark. 110, 853 S.W.2d 864 (1993). Similarly, the obligation to construct or maintain farm crossings or irrigation channels is consistent with the conveyance of fee simple title. These provisions secure easements to the grantors across the land conveyed to Milwaukee, and probably would have been unnecessary had Milwaukee only held the rights of way as easements. See Midkiff v. Castle & Cooke. Inc., 45 Haw. 409, 368 P.2d 887, 893 (1962); Battelle v. New York R.R., 211 Mass. 442, 97 N.E. 1004 (1912); Cf. Roeder, 105 Wash.2d at 573, 716 P.2d 855 (reservation to the grantor of the right to make certain use of the property is consistent with the conveyance of a fee).
[10] Because we hold the deeds conveyed fee simple tide, we need not reach the State's standing issue.
[1] Judge Friel's discussion of this topic in his memorandum opinion is a benchmark of excellence.
[2] Scott v. Wallitner, 49 Wash.2d 161, 162, 299 P.2d 204 (1956) (citing Morsbach v. Thurston County, 152 Wash. 562, 278 P. 686 (1929); Swan v. O'Leary, 37 Wash.2d 533, 225 P.2d 199 (1950); A.M.S., Annotation, Deed to Railroad Company as Conveying Fee or Easement, 132 A.L.R. 142 (1941)).
[3] Morsbach, 152 Wash, at 571, 278 P. 686; Roeder, 105 Wash.2d at 572, 716 P.2d 855; Veach, 92 Wash.2d at 573, 599 P.2d 526.
[4] In every case where this court has considered a deed conveying an interest in a narrow strip of land to a railroad company we have found only easements. See Biles v. Tacoma O. & G.H. R.R., 5 Wash. 509, 32 P. 211 (1893); Reichenbach v. Washington Short Line Ry., 10 Wash. 357, 360, 38 P. 1126 (1894); Pacific Iron Works v. Bryant Lumber & Shingle Mill Co., 60 Wash. 502, 111 P. 578 (1910); Neitzel v. Spokane Int'l Ry., 65 Wash. 100, 117 P. 864 (1911); Morsbach v. Thurston County, 152 Wash. 562, 278 P. 686 (1929); Swan v. O'Leary, 37 Wash.2d 533, 225 P.2d 199 (1950); Veach v. Culp. 92 Wash.2d 570, 599 P.2d 526 (1979); Zobrist v. Culp, 95 Wash.2d 556, 627 P.2d 1308 (1981); Roeder Co. v. Burlington N. Inc., 105 Wash.2d 567, 716 P.2d 855 (1986); Lawson v. State, 107 Wash.2d 444, 730 P.2d 1308 (1986); see also, King County v. Squire Inv. Co., 59 Wash.App. 888, 801 P.2d 1022 (1990), review denied, 116 Wash.2d 1021, 811 P.2d 219 (1991).
[5] Cabell v. Markham, 148 F.2d 737, 739 (2d Cir.), cert. granted, 325 U.S. 847, 65 S.Ct. 1415, 89 L.Ed. 1969, aff'd, 326 U.S. 404, 66 S.Ct. 193, 90 L.Ed. 165 (1945).
[6] Our cases also consider extraneous circumstances regardless of deed language, no matter how clear. Harris v. Ski Park Farms, Inc., 120 Wash.2d 727, 742-13, 844 P.2d 1006 (1993) (citing Berg v. Hudesman, 115 Wash.2d 657, 669, 801 P.2d 222 (1990)), cert. denied, 510 U.S. 1047, 114 S.Ct. 697, 126 L.Ed.2d 664 (1994).
[7] The preprinted railroad deed language specifies "`HEREBY CONVEYING a strip, belt or piece of land fifty feet in width on each side of the center line of the Railway of said Company, as now located and established over and across said land.'" Majority Op. at 910 (quoting Clerk's Papers (Bailey) at 532) (emphasis added). As Judge Friel noted: "It was not an uncommon instance for the formal acquisition of the railroad to occur after the railroad was built and in use." Memorandum Decision by Judge Friel (Bailey) at 6; Clerk's Papers (Bailey) at 742.
[8] Generally, as a last resort in deed interpretation we construe against the grantor. Apparently, this rule is premised on the custom that the grantor prepares the deed. In Harris, the Court of Appeals held that that rule of construction was not helpful because the grantee had drafted the proposed deed language in the purchase and sale agreement. Harris v. Ski Park Farms, Inc., 62 Wash.App. 371, 375, 814 P.2d 684 (1991), cert. denied, 510 U.S. 1047, 114 S.Ct. 697, 126 L.Ed.2d 664 (1994).
[9] Deed language omitted from the majority opinion makes it clear $5.00 or $10.00 was the total, actual consideration: "And said Grantor ... covenant[s] and agree[s] that said grants are upon no other consideration than that named herein...." Clerk's Papers (Bailey) at 532. While it is the custom today to state nominal consideration in deeds, it apparently was not the custom in the early 1900s. See also 6. A.L.R. 1036-1039 (citing Esso Standard Oil Co. v. Texas & New Orleans Ry., 127 So.2d 551 (La.App.1961)) (same consideration as recommended in prior condemnation proceedings, easement); Hodges v. Owings, 178 Md. 300, 13 A.2d 338 (1940) (grantor anxious to have railroad built and nominal consideration, easement); see also A.E. Korpela, Annotation, Deed to Railroad Company as Conveying Fee or Easement, 6 A.L.R.3d 973, 1038-39 (1966) (discussing seven cases where fair market value paid resulted in a fee, five cases where nominal consideration resulted in easements, and three cases where form of deed and four corners interpretation outweighed nominal consideration in favor of finding a fee).