KING COUNTY, a political subdivision of the State of Washington, Plaintiff,

v.

John RASMUSSEN and Nancy Rasmussen, husband and wife, and their marital community, Defendants.

No. C00–1637R.

United States District Court, W.D. Washington, at Seattle.

May 25, 2001.

Scott Johnson, Howard P. Schneiderman, King County Prosecuting Attorney's Office, Seattle, WA, for plaintiff.

J. Jarrette Sandlin, Sandlin Law Firm, Zillah, WA, for defendants.

ORDER GRANTING IN PART PLAIN-
TIFF'S MOTIONS TO STRIKE,
GRANTING PLAINTIFF'S MO-
TION FOR SUMMARY JUDG-
MENT, AND GRANTING PLAIN-
TIFF'S MOTION TO DISMISS

ROTHSTEIN, District Judge.

THIS MATTER comes before the court on plaintiff King County's (the "County") motion for summary judgment, motion to dismiss, and motions to strike. Having reviewed the papers filed in support of and in opposition to these motions, the court rules as follows:

## I. BACKGROUND

The dispute centers on ownership of a 100'—wide strip of land that runs along the eastern shore of Lake Sammamish in King County, Washington. Homesteaders Bill Hilchkanum and Mary Hilchkanum claimed the strip and the surrounding land in 1876. They received their final owner-ship certificate in 1884 and their fee patent in 1888. On May 9, 1887, by deed, the Hilchkanums conveyed an interest in the strip to the Seattle Lake Shore and East-ern Railway Company (the "Railway"). The text of the deed states:

> In Consideration of the benefits and ad-vantages to accrue to us from the loca-tion construction and operation of the Seattle Lake Shore and Eastern Rail-way, in the County of King, in Washing-ton Territory, we do hereby donate grant and convey unto said Seattle Lake Shore and Eastern Railway Company a right-of-way one hundred (100) feet in width through our lands in said County described as follows to wit
>
> Lots one (1) two (2) and three (3) in section six (6) township 24 North of Range six (6) East.
>
> Such right of way strip to be fifty (50) feet in width on each side of the center line of the railway track as located across our said lands by the Engineer of

said railway Company which location is described as follows to wit [legal de-scription]

> And the said Seattle Lake Shore and Eastern Railway Company shall have the right to go upon the land adjacent to said line for a distance of two hundred (200) feet on each side thereof and cut down all trees dangerous to the opera-tion of said road
>
> To have and to hold the said premises with the appurtenances unto the said party of the second part and to its suc-cessors and assigns forever.

Mary Hilchkanum later conveyed her portion of the homestead property to her husband by quitclaim deed. The convey-ance is "less (3) three acres right of way of Rail Road." Bill Hilchkanum then con-veyed the property to a third party "less three (3) acres heretofore conveyed to the Seattle International Railway for right of way purposes." Later conveyances of the property included language "excepting" the Railway right of way from the legal descriptions. John Rasmussen and Nancy Rasmussen (the "Rasmussens") currently own a portion of what was the Hilchkanum property. The right of way strip bisects their land.

The Railway, and its successor Burling-ton Northern, built a track on the strip of land and used the track regularly for rail service until approximately 1996. In 1997, Burlington Northern sold its railway corri-dor, including the Hilchkanum strip, to The Land Conservancy of Seattle and King County ("TLC"). TLC petitioned the United States States Surface Trans-portation Board ("STB") to abandon use of the corridor for rail service under the Na-tional Trail System Act, 16 U.S.C. § 1247(d) ("Rails–to–Trails Act"). The STB approved interim trail use of the cor-ridor by King County and issued a Notice of Interim Trail Use. The County then

purchased the corridor from TLC and obtained title to the right of way carved from the Hilchkanum property.

The Rasmussens have vigorously opposed the County's efforts to railbank the strip and have asserted a fee simple interest in the right of way. As a result, the County brought this action to quiet title and to obtain a declaration of its rights to use the strip. The County received a preliminary injunction in state court against the Rasmussens to prevent interference with County work on the site. The Rasmussens then removed the action to federal court. The Rasmussens have counterclaimed with allegations that the County violated their First Amendment, Second Amendment, Fifth Amendment and Fourteenth Amendment rights, along with violations of 16 U.S.C. § 1247(d), 42 U.S.C. § 1983, 28 U.S.C. § 1358, and Article 1, Section 16 of the Washington state constitution. The County brought these motions to dispose of the entire case.

## II. ANALYSIS

### A. *Motion to Strike Briefing and Evidence*

#### 1. *Overlength Briefs*

Civil Rule 7(c) of the Western District of Washington limits parties to 24–page memoranda unless they obtain prior permission from the court. The Rasmussens submitted a 34–page response to the County's motion for summary judgment and a 32–page response to the County's motion to dismiss. Moreover, a declaration from John Rasmussen accompanies the responses and includes legal argument. The Rasmussens did not request advance permission from the court to file overlength briefs.

The Rasmussen's submissions violate the plain language of Civil Rule 7(c). The court will strike all briefing of both responses beyond page 24, and the arguments contained in those excess pages will

not be considered. In addition, the court will strike all portions of the John Rasmussen declaration and attached exhibits that include legal argument. Specifically, the following portions of John Rasmussen's declaration will not be considered:

(a) Exhibits 1, 9, and 10 to the Rasmussen declaration, which are legal briefs on various issues;

(b) Page 2, line 17 – page 4, line 7 of the declaration, which contain legal argument;

(c) Page 7, line 26 – page 10, line 3 of the declaration, which contain legal argument, and Exhibits 4 – 7 introduced on those pages;

(d) Page 12, lines 11 – 15 of the declaration, which contain legal argument; and

(e) Page 18, line 4 – page 20, line 19 of the declaration, which contain legal argument, and Exhibits 11 – 14 introduced on those pages.

#### 2. *Inadmissible Evidence*

"It is well settled that only admissible evidence may be considered by the trial court in ruling on a motion for summary judgment." *Beyene v. Coleman Sec. Serv., Inc.,* 854 F.2d 1179, 1181 (9th Cir.1988). Evidence that lacks foundation is inadmissible. *See* Fed.R.Evid. 602 (witness must possess personal knowledge). In paragraph 1 of the response to the motion for summary judgment, the Rasmussens speculate on the intent of Bill Hilchkanum based on his Native American ethnicity. The Rasmussens provide no evidence to support the allegations. Therefore, all but the last two sentences of the paragraph will be stricken.

The Rasmussens also submit a document purportedly created by an unnamed government employee. John Rasmussen attempts to admit this document through his declaration, but he does not have per-

sonal knowledge of its authenticity. Fed. R.Evid. 901. As a result, Exhibit 3 to the Rasmussen declaration; page 5, lines 4 – 11 of the Rasmussen declaration; and paragraph 8 of the response to the motion for summary judgment lack foundation and will be stricken.

The County seeks to strike as irrelevant other evidence and arguments about "spur lines" and about the County's behavior in this dispute. Although the evidence's value may be minimal, the court will not strike the evidence in its entirety. The court will accord the evidence the appropriate weight.

### 3. Unauthorized Memoranda

Finally, Civil Rule 7(b) provides for an opening brief, a response, and a reply. Nothing in the rule or in Fed.R.Civ.P. 56 authorizes a surreply. The Rasmussens have filed a surreply to the motion to dismiss and have submitted a supplemental declaration from John Rasmussen. The Rasmussens did not request prior permission from the court. Because the court rules do not authorize these submissions, they will be stricken and will not be considered. *Cf., e.g., Provenz v. Miller,* 102 F.3d 1478, 1483 (9th Cir.1996) (new evidence not considered in reply). The County's motions to strike are GRANTED in part.

### B. Motion for Summary Judgment

The County has moved for summary judgment on both its causes of action.

First, the County seeks to quiet title to the disputed strip of land. Second, the County seeks a declaration that it has the right to use the land without interference.

Summary judgment is appropriate when "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). There are no material factual disputes in this matter. Although the Rasmussens have raised factual issues regarding the County's behavior and the STB's proceedings, those have little bearing on how the court should interpret the Hilchkanum deed.

### 1. Quiet Title Action

Ownership of the strip of land turns on the deed executed by the Hilchkanums in 1887. The interest they granted to the Railway passes to the County as the Railway's successor in interest.[1] If the Hilchkanums granted a fee interest to the Railway, then the County possesses fee title to the strip. If the Hilchkanums granted only an easement to the Railway, then the County possesses an easement and the Rasmussens own the underlying land.

The intent of the parties is "of paramount importance" when interpreting deeds. *Brown v. State,* 130 Wash.2d 430, 924 P.2d 908, 911 (1996). The deed must "clearly indicate" an intent to make the conveyance conditional. *King County v. Hanson Inv. Co.,* 34 Wash.2d 112, 208 P.2d 113, 117 (1949); *see also Brown,* 924 P.2d at 912.[2] Intent analysis requires case-by-

---

1. The Rasmussens argue that the Railway—and therefore the County—received no interest at all, because the Hilchkanums had not received their homestead patent when they executed the deed. To the contrary, federal law specifically authorized unpatented homesteaders to transfer land to railroads for rights of way. *See* Act of March 3, 1873, c. 266, 17 U.S.Stat. 602; *Pierce v. Chicago, M & P.S. Ry. Co.,* 52 Mont. 110, 156 P. 127, 129–30 (1916). The Rasmussens also state that the

County has no claim to the land because the STB improperly authorized railbanking. As explained later, the argument challenges the STB's order, and this Court has no jurisdiction over such challenges. *See* 28 U.S.C. §§ 2321(a), 2342(5).

2. Washington courts presume that a deed in statutory form grants a fee simple. *Brown,* 924 P.2d at 912. The Hilchkanum deed is not in statutory form, so the presumption does

case examination of the overall effect of the (1) language of the deed, (2) subsequent behavior of the parties regarding the land, and (3) circumstances at the time of execution. *See Brown*, 924 P.2d at 912; *Scott v. Wallitner*, 49 Wash.2d 161, 299 P.2d 204, 204–05 (1956). The three factors interconnect in the Hilchkanum case to depict intent to convey a fee interest.

#### a. Language of the Deed

■ "The intent of the parties is to be derived from the entire instrument...." *Harris v. Ski Park Farms, Inc.*, 120 Wash.2d 727, 844 P.2d 1006, 1012 (1993); *see also Brown*, 924 P.2d at 913.[3] The Hilchkanum deed's overall language does not restrict the conveyance by designating a specific purpose, by limiting use of the land, or by adding a reversion clause. The omissions result in an unconditional grant and distinguish the deed from those in which courts have found easements. *See Roeder Co. v. Burlington N., Inc.*, 105 Wash.2d 567, 716 P.2d 855, 859 (1986) ("for all railroad and other right-of-way purposes"); *Swan v. O'Leary*, 37 Wash.2d 533, 225 P.2d 199, 199 (1950) ("for the purpose of a Railroad right-of-way"); *Northlake Marine Works, Inc. v. City of Seattle*, 70 Wash.App. 491, 857 P.2d 283, 286–87 (1993) ("to its successors and assigns forever for railway purposes"); *King County v. Squire Inv. Co.*, 59 Wash.App. 888, 801 P.2d 1022, 1023 (1991) ("so long as said land is used as a right-of-way by said railway Company ... and this grant is upon the condition that said railway shall

be completed over said lands on or before January 1st, 1888"). In contrast to those cases, the open-ended language of the Hilchkanum deed shows intent to convey a fee.

The absence of limitations in the Hilchkanum right of way conveyance is even more striking when contrasted with a different, conditional grant in the *same* deed. The deed grants the Railway the right to "go upon the land adjacent to said line ... and cut down" dangerous trees. This language specifies a purpose and thus differs significantly from the conveyance at issue. Thus it is clear that the parties knew how to limit a grant, and that they chose not to limit the right of way.

■ The Rasmussens ignore the "entire instrument's" unconditional language and instead urge the court to focus on isolated words. For example, they note that the Hilchkanum deed recognizes the Railway will build tracks on the land. However, an acknowledgement of the probable use cannot limit the conveyance unless accompanied by a specific restriction on use— something the Hilchkanum deed lacks. *See Scott*, 299 P.2d at 205 (fee simple when deed acknowledged that land would be used for railway but did not include any specific limitations); *see also Brown*, 924 P.2d at 913. Similarly, the Rasmussens claim the deed limits the conveyance by using the term "right of way" in the text and caption, but courts have rejected this narrow view as well. *See, e.g., Brown*, 924 P.2d at 912, 915 (railroad can obtain a

---

not apply, although clear evidence of conditions still is required.

**3.** Washington courts have found the following overlapping factors helpful in analyzing deed language: (1) whether the deed conveys a strip of land and does not include language regarding the purpose or limiting the conveyance, (2) whether the deed conveys a strip of land and limits use to a specific purpose, (3) whether the deed conveys a right of way over

a strip of land rather than a strip of land, (4) whether the deed grants only the right to construct a railway, (5) whether the rights revert to the grantor if the railway ceases operations, (6) whether the stated consideration is nominal or substantial, (7) whether the deed contains a habendum clause limiting use, and other considerations based on language in the deed. *See Brown*, 924 P.2d at 912.

"right of way" as either a fee or an easement); *Harris* 844 P.2d at 1011–13 (1993) (court found fee simple despite right of way language); *Roeder Co. v. K & E Moving & Storage Co., Inc.*, 102 Wash.App. 49, 4 P.2d 839, 842–43 (2000).[4]

Furthermore, because the Hilchkanums were homesteaders without a final patent, federal law limited them to certain types of conveyances, such as grants to schools, cemeteries, and **rights of way** to railways. *See* 17 U.S.Stat. 602. The Act provides more context for the choice of the term "right of way" in the deed, indicating that the Hilchkanums chose the phrase out of necessity rather than from a desire to create an easement.

Moreover, other aspects of the language favor a fee simple. The deed grants a "strip" of land described in metes and bounds rather than merely a right "over" the land (as it does with the tree-cutting grant). The deed uses the word "convey" when granting the strip, which is associated with fee transfers (notably, "convey" is absent in the tree-cutting grant). *See Hanson*, 208 P.2d at 119. Finding that the overall language contains no restriction, the court concludes that the Hilchkanums intended to convey a fee interest to the Railway.

### b. Later Behavior of Parties

The Hilchkanums' descriptions of the rest of their land in later transfers buttress the intent gleaned from the plain language. After the grant to the Railway, Mary Hilchkanum conveyed her portion of the homestead to her husband. He then conveyed the homestead to a third party. Each deed states that it is "less" the land of the right of way. When parties execute later deeds, they also carve out exceptions for the right of way—as the Hilchkanums did. This is a strong indication that the parties viewed the grant to the Railway to be a fee simple. *See Harris*, 844 P.2d at 1013 (any other interpretation would render exception "superfluous"); *Scott*, 299 P.2d at 205.

### c. Circumstances Surrounding Execution

Finally, the circumstances surrounding the execution of the deed confirm an intent to convey a fee interest. Deeds from other landowners during the same time period contain different language than the Hilchkanum deed. The *Squire* and *Northlake* deeds are modeled off the same form deed as the Hilchkanums'. *Northlake*, 857 P.2d at 286–87; *Squire*, 801 P.2d at 1023. However, both *Squire* and *Northlake* contain additional language that specifically restricts the grant to railroad purposes and reverts the interest to the grantor if the railroad ceases to operate. *Northlake*, 857 P.2d at 286–87; *Squire*, 801 P.2d at 1023. Nowhere in the Hilchkanums' deed are there any such limitations. *See generally* Danya C. Wright & Jeffrey M. Hester, *Pipes, Wires, and Bicycles: Rails–to–Trails, Utility Licenses, and the Shifting Scope of Railroad Easements From the Nineteenth to the Twenty–First Centuries*, 27 Ecology L.Q. 351, 378 (2000) (explaining that railroads used form fee simple deeds and then added language to reflect limitations requested by landowners, which resulted in railroads possessing a variety of fee and easement interests along the same tracks).

The language of the deed, the behavior of the parties, and the circumstances con-

---

4. One Washington case did find that a deed containing the term "right of way" without additional limiting language granted an easement rather than a fee. *Veach v. Culp*, 92 Wash.2d 570, 599 P.2d 526 (1979). *Veach*, however, did not analyze the circumstances surrounding the transfer or the subsequent behavior of the parties. Evidence on both factors exists here and provides context that was lacking in *Veach*.

verge to show the Hilchkanums' intent to convey a fee simple. Even construing the facts in the light most favorable to the Rasmussens, only isolated words support their argument, and the evidence does not "clearly indicate" an intent to condition the conveyance. The County, as the Railway's successor, possesses a fee simple in the strip of land.[5] The County's motion for summary judgment is GRANTED, and title is quieted in the County's favor.

### 2. Declaratory Relief

Because the County possess a fee simple in the strip of land, it has a right to access the property without interference from the Rasmussens. The County's motion for summary judgment on its second cause of action is GRANTED.

### C. Motion to Dismiss

The County has moved to dismiss all the Rasmussens' counterclaims for lack of subject matter jurisdiction or for failure to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(1), 12(b)(6). Dismissal for failure to state a claim is appropriate if, based on the complaint and attachments, the party can prove no set of facts in support of the claim which would entitle him to relief. *See Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 248 (9th Cir. 1997). Counterclaims (a), (d), (f), and (g) rely on a finding that the Rasmussens own the strip of land. Because the court has quieted title in the County, the Rasmussens have no rights to the strip of land and none of the counterclaims state a claim for which relief can be granted.

The Rasmussens attempt to overcome this conclusion by arguing that the County's title is invalid, because the STB order that authorized railbanking was allegedly invalid. By challenging the STB proceedings, the Rasmussens are asking the court to reverse an STB order. *See Dave v. Rails–to–Trails Conservancy*, 79 F.3d 940, 942 (9th Cir.1996) (court looks at whether practical effect of cause of action requires review of order); *Grantwood Village v. Missouri Pac. R.R. Co.*, 95 F.3d 654, 657 (8th Cir.1996) (challenge to property transfer required review of order). The courts of appeals have exclusive jurisdiction over any proceeding "to enjoin or suspend, in whole or in part, a rule, regulation, or order of the Surface Transportation Board...." 28 U.S.C. § 2321(a); *see also Dave*, 79 F.3d at 942; *Glosemeyer v. Missouri–Kansas–Texas R.R.*, 879 F.2d 316, 320 (8th Cir.1989); *Louisiana–Pacific Corp. v. Texas Dep't of Transp.*, 43 F.Supp.2d 708, 711 (E.D.Tex.1999). Thus, this court lacks subject matter jurisdiction to consider the Rasmussens' argument, and the Rasmussens fail to state a claim for which relief can be granted. The County's motion to dismiss counterclaims for violations of 16 U.S.C. § 1247(d), the Fifth and Fourteenth Amendments, 28 U.S.C. § 1358, and the Washington State Constitution, Article 1, Section 16 will be GRANTED.

Counterclaims (b) and (c), for violations of the First Amendment and Second Amendment, do not explicitly rely on the Rasmussens' ownership of the land.[6]

---

5. The Rasmussens submitted evidence that the deed incorrectly describes the boundaries of the right of way. This does not alter the County's rights, because the location of the actual tracks controls. *See DD & L, Inc. v. Burgess*, 51 Wash.App. 329, 753 P.2d 561, 564 (1988).

6. The Rasmussens failed to include an allegation that the County violated 42 U.S.C. § 1983 in either counterclaim (b) or (c). Instead, they stated the allegation as a separate counterclaim. The Rasmussens have acknowledged in their briefing that the Section 1983 allegation was intended to be incorporated into the other causes of action rather than stand alone. Therefore, the court will

However, both causes of action still fail to state a claim for which relief may be granted. A cause of action against a county for constitutional violations requires both allegations of unconstitutional behavior and allegations that the conduct resulted from an official policy, practice, or custom. *See Leatherman v. Tarrant County,* 507 U.S. 163, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993); *Gibson v. United States,* 781 F.2d 1334, 1337–38 (9th Cir.1986). The Rasmussens' counterclaims do not allege any specific behavior by the County that violated their rights. Moreover, the Rasmussens do not allege any policies, customs, or practices that violated their rights. In their briefing, but not in the counterclaims, the Rasmussens quote numerous county ordinances. They do not allege that any of these ordinances violated their rights, nor do they explain any actions County employees took to enforce the ordinances that somehow violated the Rasmussens' rights. The Rasmussens have failed to plead any facts to support the basic elements of their causes of action and have therefore failed to state a claim. The County's motion to dismiss counterclaims (b) and (c) for violations of the First Amendment and Second Amendment will be GRANTED.[7]

## III. CONCLUSION

The court GRANTS plaintiff's motions to strike in part. The court GRANTS plaintiff's motion for summary judgment. The court quiets title in the County's favor and declares that the County has the right to quiet enjoyment of its property without interference by the defendants. The court

incorporate 42 U.S.C. § 1983 into counterclaims (b) and (c) and counterclaim (e), which contained the misplaced Section 1983 allegation, will be DISMISSED.

GRANTS plaintiff's motion to dismiss all counterclaims.

7. The Rasmussens request discovery, mediation, a stay of proceedings, and oral argument. None of these are necessary in light of the court's rulings, and the requests will be DENIED.