**KING COUNTY, a political subdivision of the State of Washington, Plaintiff–counter–defendant–Appellee,**

v.

**John RASMUSSEN; Nancy Rasmussen, husband and wife, and their marital community, Defendants–counter–claimants–Appellants.**

No. 01–35610.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 13, 2002.

Filed Aug. 9, 2002.

J. Jarrette Sandlin, Sandlin Law Firm, Zillah, WA, for the defendants-counter-plaintiffs-appellants.

Howard P. Schneiderman and Scott Johnson, King County Prosecuting Attorney's Office, Seattle, WA, for the plaintiff-counter-defendant-appellee.

Before B. FLETCHER and GOULD, Circuit Judges, and MURGUIA, District Judge.[1]

## OPINION

BETTY B. FLETCHER, Circuit Judge.

This case arises from a dispute over a 100–foot–wide strip of land running along a portion of the eastern shore of Lake Sammamish in King County, Washington,

---

1. The Honorable Mary H. Murguia, United States District Court Judge for the District of Arizona, sitting by designation.

that was formerly used as part of a railway corridor. King County filed suit against the Rasmussens to quiet title over this strip of land, which bisects the Rasmussens' property, and to obtain a declaratory judgment that it is entitled to quiet enjoyment of the strip.

King County claims it owns a fee simple estate in the strip. The Rasmussens, in turn, claim that their predecessors in interest granted only an easement over the strip and that the rights in the easement have reverted to the Rasmussens so that they now have fee simple title to the strip. The district court granted summary judgment in favor of King County and dismissed the Rasmussens' counterclaims. Because we conclude that no genuine issues of material fact exist for trial and that King County holds the strip in fee simple, we affirm.

## I.

### Factual and Procedural Background

In 1876, homesteaders Bill Hilchkanum and Mary Hilchkanum claimed property along the eastern shore of Lake Sammamish in King County, Washington. They received their final ownership certificate in 1884 and their fee patent in 1888. On May 9, 1887, the Hilchkanums conveyed an interest in the strip to the Seattle Lake Shore and Eastern Railway Company ("the Railway"). The text of the "Right of Way Deed" is as follows:

In consideration of the benefits and advantages to accrue to us from the location construction and operation of the Seattle Lake Shore and Eastern Railway in the County of King in Washington Territory, we do hereby donate grant and convey unto said Seattle Lake Shore and Eastern Railway Company a right of way one hundred (100) feet in width through our lands in said County described as follows to wit

Lots one (1) two (2) and three (3) in section six (6) township 24 North of Range six (6) East.

Such right of way strip to be fifty (50) feet in width on each side of the center line of the railway track as located across our said lands by the Engineer of said railway company which location is described as follows to wit [legal description in metes and bounds].

And the said Seattle Lake Shore and Eastern Railway Company shall have the right to go upon the land adjacent to said line for a distance of two hundred (200) feet on each side thereof and cut down all trees dangerous to the operation of said road.

To have and to hold the said premises with the appurtenances unto the said party of the second part and to its successors and assigns forever.

The deed was handwritten by a notary public.

Mary Hilchkanum later conveyed lots 1 and 3 of the homestead property to her husband by quitclaim deed. The conveyance is "less (3) acres right of way of Rail Road." Bill Hilchkanum then conveyed lot 1 to Chris Nelson "less three (3) acres heretofore conveyed to the Seattle and International Railway for right of way purposes." The deed by which the Hilchkanums conveyed lot 2 of their homestead property did not contain an exception for the railroad right of way. The Rasmussens claim that the right of way bisects portions of lots 2, 3, and 5.[2]

The Railway, and its successor Burlington Northern, built a track on the strip of

---

2. To the extent a portion of the right of way bisects lot 5, that portion is not at issue in this quiet title action. King County bases its claim on the Hilchkanum deed conveying a right of way bisecting lots 1, 2, and 3 to the Railway. The County presented no deed conveying a right of way across lot 5 to the Railway.

land and used the track regularly for rail service until approximately 1996. In 1997, Burlington Northern sold its railway corridor, including the Hilchkanum strip, to The Land Conservancy of Seattle and King County ("TLC").

On June 11, 1997, TLC petitioned the United States Surface Transportation Board ("STB") to abandon use of the corridor for rail service under the National Trail System Act, 16 U.S.C. § 1247(d) ("Rails to Trails Act"). The STB approved interim trail use of the corridor—called railbanking—by King County and issued a Notice of Interim Trail Use. The County then purchased the corridor from the TLC and obtained title to the right of way carved from the Hilchkanum property.[3]

The Rasmussens oppose King County's efforts to railbank the right of way and claim that King County has no right to use the right of way as a trail because the Railway and its successors held only an easement for railroad purposes. As a result, King County brought this action in state court to quiet title and to obtain a declaration of its rights in the strip. The Rasmussens removed the action to federal court and counterclaimed with allegations that King County violated their First, Second, Fifth, and Fourteenth Amendment rights and violated 16 U.S.C. § 1267(d), 42 U.S.C. § 1983, 28 U.S.C. § 1358, and Article 1, Section 16 of the Washington state constitution.

King County moved for summary judgment on its claim to the property and moved to dismiss the Rasmussens' counter-claims for failure to state a claim and

for lack of subject matter jurisdiction. In response to these motions, the Rasmussens filed two over-length briefs and a declaration from Mr. Rasmussen containing several additional pages of legal argument. King County filed its reply and moved to strike the over-length portions of the Rasmussens' briefs and the legal arguments in Mr. Rasmussen's declaration. They also moved to strike inadmissible evidence from the briefs and the declaration. The Rasmussens filed a brief in response to King County's motion to strike as well as a separate surrebuttal brief. King County moved to strike the surrebuttal brief.

In a published opinion, the district court struck the over-length portions of the Rasmussens' response brief as well as the legal arguments in Mr. Rasmussen's declaration. *See King County v. Rasmussen,* 143 F.Supp.2d 1225, 1227 (W.D.Wash. 2001). It also struck a paragraph in the response brief that indicated that Bill Hilchkanum was a Native American and was illiterate; the Rasmussens cited no evidence in support of this assertion in their brief to the district court. *Id.* at 1227–28. The district court also agreed to strike the surrebuttal brief. *Id.* at 1228. Finally, it granted King County's motion for summary judgment and dismissed the counterclaims. *Id.* at 1231. The Rasmussens appeal.

## II.

### Jurisdiction

■ The district court had jurisdiction over this removal action if King County

---

**3.** The Rasmussens contend that King County has not provided evidence that it has an interest in a significant portion of the strip of land bisecting the Rasmussens' property. They claim that the only evidence provided by the County is a title insurance document that refers solely to the portion of the strip on Government Lot 3; only 3% of the subject strip is on Government Lot 3. However, King

County has also provided the quitclaim deed by which TLC transferred its interest to King County. This deed indicates that the portion of the strip on Government Lot 2 was also conveyed; the Rasmussens assert that 96% of the strip lies on Government Lot 2. Thus, King County has submitted undisputed evidence that it has an interest in the subject property.

could have brought the case in federal court in the first place. 28 U.S.C. § 1441(a). King County could have brought this action in federal court initially because the district court would have had federal question jurisdiction pursuant to 28 U.S.C. § 1331. King County's complaint included an allegation that it had a legal right to the strip of land in question even if the original deed conveyed only an easement. King County relied on 16 U.S.C. § 1247(d) as the source of this right. Thus, there was a federal question on the face of the well-pleaded complaint. *See Patenaude v. Equitable Life Assurance Soc'y of United States*, 290 F.3d 1020, 1023 (9th Cir.2002) ("The presence or absence of federal-question jurisdiction is governed by the well-pleaded complaint rule ...." (quoting *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987)) (internal quotation marks omitted)).

This court has appellate jurisdiction over the district court's summary judgment pursuant to 28 U.S.C. § 1291.

### III.

### Motions to Strike

■ The Rasmussens argue that we should consider materials struck by the court below. The district court struck the over-length portions of the Rasmussens' briefs in response to King County's motions for summary judgment and to dismiss the counterclaims. It also struck legal arguments contained in John Rasmussen's declaration as well as the Rasmussens' surrebuttal brief.

The district court struck these materials on the basis of Western District of Washington Local Civil Rule 7, which limits the length of summary judgment briefs to twenty-four pages, limits the length of briefs relating to other motions to eight pages, and makes no allowance for surrebuttal briefs. Parties may file over-length briefs if they obtain prior permission from the court. The Rasmussens violated this rule by filing two thirty-four-page briefs without obtaining prior permission.[4] Mr. Rasmussen's declaration added further briefing well beyond the twenty-four-page limit. Declarations, which are supposed to "set forth facts as would be admissible in evidence," should not be used to make an end-run around the page limitations of Rule 7 by including legal arguments outside of the briefs. Fed.R.Civ.P. 56(e). As for the surrebuttal brief, the Rasmussens claim that it merely contained a response to the motion to strike. This is not so. It contains legal arguments on the motion to dismiss the counterclaims. The Rasmussens filed a separate response to the County's motion to strike, which the district court considered. Thus, the district court acted properly in granting King County's motions to strike.

For the most part, however, the fact that this material has been struck will not affect our review. The final pages of the summary judgment response brief do not contain separate legal arguments that are waived because they were not raised in the first twenty-four pages of the brief. Instead, they contain comparisons between the facts of this case and the facts of a Washington Court of Appeals case dealing with a railroad right of way. We must consider the effect of any case relevant to the arguments raised, regardless of whether the Rasmussens briefed the particular case.

As for the counterclaims, the only claims not addressed in the first twenty-four

---

4. The Rasmussens claim that their failure to obtain prior approval to file over-length briefs was due to a miscommunication with the district court's law clerk. However, Rule 7 unambiguously requires prior approval to file briefs exceeding the page limitations set forth in the rule.

pages of the brief opposing Rule 12(b) dismissal are the Rasmussens' takings claims. However, the district court did not consider these claims waived and instead dismissed them for failure to state a claim. *Rasmussen,* 143 F.Supp.2d at 1231 (disposing of Fifth Amendment and state constitutional takings claims). Thus, we will address all of the Rasmussens' counterclaims.

## IV.

### Summary Judgment

*A. Standard of Review*

■ A grant of summary judgment is reviewed *de novo. Devereaux v. Abbey,* 263 F.3d 1070, 1074 (9th Cir.2001). This court must determine, viewing the evidence in the light most favorable to the nonmoving party, whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. *Id.* All reasonable inferences from the evidence must be drawn in favor of the nonmoving party. *Orin v. Barclay,* 272 F.3d 1207 (9th Cir. 2001).

*B. Validity of Conveyance Prior to Obtaining Fee Patent*

■ The Rasmussens claim that Bill Hilchkanum did not have the power to convey anything more than an easement to the Railway because he had not perfected his title to the homestead when he made the conveyance in 1887. Under the Act of March 3, 1873, ch. 266, 17 Stat. 602 (1873),[5]

a homesteader could convey a right of way to a railroad before perfecting his title. The use of the term "right of way" in the statute may have limited a homesteader to conveying only an easement, not a fee simple, to a railroad.

However, we need not answer this question to decide this case because Bill Hilchkanum perfected his title to the homestead property in 1884, three years before he conveyed the interest in the strip of land to the Railway in 1887. He entered the subject property in 1876 and took up residence there. The Homestead Act of 1862 provided that he could receive a certificate or patent at the expiration of five years from the date of entry if he provided proof that he had resided or cultivated the land for these five years, that he had not alienated any of the land, and that he had borne true allegiance to the United States. *See* Homestead Act, ch. 75, 12 Stat. 392 (1862). Bill Hilchkanum submitted the necessary proof and obtained his certificate of ownership in 1884. Since he had fulfilled all the necessary conditions of ownership, his title was perfected in 1884. As a result, he did not need to act within the restrictions of the Act of March 3, 1873 to alienate his property nor did he need to include an after-acquired property clause in his conveyances; he had title free and clear and could convey to the Railway whatever he wished.

Although Hilchkanum did not obtain his patent deed until 1888, the Rasmussens cite no authority suggesting that the certificate of ownership did not perfect his title,

5. The Act provides that:

[A]ny person who has already settled or hereafter may settle on the public lands of the United States, either by pre-emption, or by virtue of the homestead law or any amendments thereto, shall have the right to transfer by warranty, against his or her own acts, any portion of his or her said pre-emption or homestead for church, ceme-

tery, or school purposes, or for the *right of way of railroads* across such pre-emption or homestead, and the transfer for such public purposes shall in no way vitiate the right to complete and perfect the title to their pre-emptions or homesteads.

Act of March 3, 1873, ch. 266, 17 Stat. 602 (1873) (emphasis added). This statute remains on the books, in slightly altered form, at 43 U.S.C. § 174.

and their own expert opined that Hilchkanum obtained "unqualified and perfect fee simple ownership" in 1884. Graddon Decl. Ex. 1, § 1 at 2. We affirm the district court's conclusion that there are no genuine issues of fact as to whether Hilchkanum had the power to convey a fee simple interest to the Railway in 1887.

## C. Easement or Fee Simple

■ King County claims that under Washington state law the Hilchkanum deed conveyed a fee simple estate in the strip of land to the Railway. The Rasmussens argue that, even if Hilchkanum had the power to convey a fee simple estate to the Railway, he intended to convey only an easement. The district court agreed with King County, as do we.

■ A conveyance of a right of way to a railroad may be in fee simple, or it may be an easement. *Veach v. Culp,* 92 Wash.2d 570, 599 P.2d 526, 527 (Wash. 1979). The intent of the parties is of paramount importance in determining what interest the deed conveyed. *Brown v. State,* 130 Wash.2d 430, 924 P.2d 908, 911 (Wash.1996). It has been said that it is a factual question to determine the intent of the parties. *Veach,* 599 P.2d at 527. But the intent of parties to a deed as well as the legal consequences of that intent are in reality mixed questions of law and fact: legal rules of deed interpretation determine how the underlying facts reflect the intent of the parties. *See Brown,* 924 P.2d at 912 (determining intent from un

disputed underlying facts on summary judgment). To ascertain the intent of the parties, one must look to the language of the deed as well as the circumstances surrounding the deed's execution and the subsequent conduct of the parties.[6] *Id.* However, the parties must "clearly indicate" an intent to make a conveyance conditional. *King County v. Hanson Inv. Co.,* 34 Wash.2d 112, 208 P.2d 113, 119 (1949) (cited in *Brown,* 924 P.2d at 912).

■ The Washington Supreme Court provided its most recent guidance on this issue in *Brown.*[7] The *Brown* court identified various factors to consider in determining whether a deed conveyed a fee simple or an easement:

[W]e have relied on the following factors: (1) whether the deed conveyed a strip of land and did not contain additional language relating to the use or purpose to which the land was to be put, or in other ways limiting the estate conveyed; (2) whether the deed conveyed a strip of land and limited its use to a specific purpose; (3) whether the deed conveyed a right of way over a tract of land, rather than a strip thereof; (4) whether the deed granted only the privilege of constructing, operating, or maintaining a railroad over the land; (5) whether the deed contained a clause providing that if the railroad ceased to operate, the land conveyed would revert to the grantor; (6) whether the consideration expressed was substantial or nominal;[8] (7) whether the conveyance

---

6. A finding of ambiguity in the language of the deed is not required to consider extrinsic evidence of the surrounding circumstances and the subsequent conduct of the parties. *Brown,* 924 P.2d at 912; *Roeder Co. v. K & E Moving & Storage Co.,* 102 Wash.App. 49, 4 P.3d 839, 841 (Wash.Ct.App.2000).

7. The *Brown* court examined deeds created from 1906 to 1910.

8. The Washington courts in recent years have not given much weight to the amount of consideration in determining the intent of the parties, particularly if the record does not establish the consideration typically paid for easements as opposed to fee simple estates. For example, the *Brown* court did not give this factor much weight because it could not be ascertained from the record whether the consideration paid for the conveyances represented the value of an easement or a fee

did or did not contain a habendum clause, and many other considerations. *Brown,* 924 P.2d at 912.

 The *Brown* court further explained that whether the parties to a railroad right of way deed used a statutory form deed is a significant factor in determining their intent. *Brown,* 924 P.2d at 912; *see Roeder Co. v. K & E Moving & Storage Co.,* 102 Wash.App. 49, 4 P.3d 839, 841 (Wash.Ct.App.2000). The court ruled that "where the original parties utilized the statutory warranty form deed and the granting clauses convey definite strips of land, we must find that the grantors intended to convey fee simple title unless additional language in the deeds clearly and expressly limits or qualifies the interest conveyed." [9] *Brown,* 924 P.2d at 912.

 In this case, however, the Hilchkanum deed did not follow the statutory warranty form. The statutory form is as follows:

> The grantor (here insert the name or names and place of residence) for and in consideration of (here insert consideration), in hand paid, convey and warrant to (here insert the grantee's name) the following described real estate (here insert description), situated in the county of _____, state of Washington.

Laws of 1886, § 3, pp. 177–78. The Hilchkanum deed used a slightly different form:

> In consideration of (here insert consideration), grantor (here insert name of grantor) does hereby donate grant and convey unto grantee (here insert name of grantee) the following described right of way (here insert description).

As a result, the Hilchkanum deed does not give rise to the presumption that the deed conveyed a fee simple. *See Roeder,* 4 P.3d at 843; *Veach,* 599 P.2d at 527 (no presumption that quitclaim deed conveyed fee simple). A failure to use the statutory warranty deed form, however, does not necessarily mean that the parties did not intend to convey a fee simple. The court must consider whether other factors indicate that the parties intended a fee simple.

 Another factor on which the *Brown* court focused was if and how the deed uses the term "right of way." The court noted that use of the term in the granting clause as a limitation or to specify the purpose of the grant generally creates only an easement. *Brown,* 924 P.2d at 913. The term "right of way," however, can have two purposes: "(1) to qualify or limit the interest granted in a deed to the right to pass over a tract of land (an easement), or (2) to describe the strip of land being conveyed to a railroad for the purpose of constructing a railway." *Id.* at 914.

In *Brown,* the term "right of way" appeared only in each deed's legal description or in the description of the railroad's obligations, instead of in the granting or habendum clauses. The court concluded that "used in this manner,'right of way' merely describes a strip of land acquired

---

simple. *Brown,* 924 P.2d at 914. Likewise, in *Roeder,* 4 P.3d at 842, the Washington Court of Appeals noted that the fact that nominal consideration was paid did not reveal much because railroads paid significant amounts for both easements and fee simple purchases. In this case, the Hilchkanums received no monetary consideration for the conveyance to the railroad. However, like the nominal consideration in *Roeder,* the lack of monetary consideration here reveals little

about the Hilchkanums' intent. Both an easement and a fee simple would have had monetary value, but the Hilchkanums declined to require any payment.

**9.** Washington Revised Code § 64.04.030 states that every deed that follows the statutory warranty deed form "shall be deemed and held a conveyance in fee simple to the grantee, his heirs, and assignes...." This rule originated in 1886. *Roeder,* 4 P.3d at 841 n. 8.

for rail lines." *Brown*, 924 P.2d at 914. Since the term did not qualify or limit the interest expressly conveyed in the granting and habendum clauses of the deeds at issue, the court concluded it did not indicate an intent to grant an easement only.[10]

Here the term "right of way" appears in the granting clause as well as in the legal description.[11] In this sense, the Hilchkanum deed suggests a possible intent to create only an easement in a way the deeds at issue in *Brown* did not. However, neither the granting nor the habendum clauses contains language clearly limiting the use of the land to a specific purpose. In virtually all cases where Washington courts have found only an easement, the granting or the habendum clauses contained such language. *See Swan v. O'Leary*, 37 Wash.2d 533, 225 P.2d 199, 199 (Wash.1950) (granting premises "for the purpose of a Railroad right-of-way"); *Morsbach v. Thurston County*, 152 Wash. 562, 278 P. 686, 687 (Wash.1929) (conveying a "right of way for the construction of said company's railroad"); *Pacific Iron Works v. Bryant Lumber & Shingle Mill Co.*, 60 Wash. 502, 111 P. 578 (Wash.1910) (holding that deed providing "to have and to hold the said premises ... for railway purposes, but if it should cease to be used for a railway the said premises shall revert to said grantors" granted easement); *Reichenbach v. Washington Short Line Ry. Co.*, 10 Wash. 357, 38 P. 1126 (Wash.1894) (construing deed which provided "so long

as the same shall be used for the operation of a railroad" as an easement); *King County v. Squire Inv. Co.*, 59 Wash.App. 888, 801 P.2d 1022, 1022 (Wash.Ct.App. 1990) (granting premises to railroad "so long as said land is used as a right-of-way by said railway Company, Expressly reserving to said grantors their heirs and assigns all their riparian rights ...."). Without such additional language, the use of the term "right of way" merely "begs the question" since a railroad could own a right of way either as an easement or in fee. *Brown*, 924 P.2d at 914.

The Hilchkanum deed contained precatory language indicating that the parties expected that the right of way would be used to construct and operate a railroad, but it did not actually condition the conveyance on such use.[12] *Brown*, 924 P.2d at 912–13. Also, in *Brown*, the court noted that identifying the general purpose of a conveyance, i.e., for railroad purposes, is not helpful in discerning intent because it does not clarify whether the right of way is an easement or a fee. *Id.* at 913.

One Washington case, *Veach*, supports the Rasmussens' contention that the mere use of the term "right of way" in the granting clause of the Hilchkanum deed, without additional language conditioning the use of the interest, creates an easement. 599 P.2d at 527. In *Veach*, the 1901 deed stated:

**10.** In a previous case, the Washington Supreme Court had held that the legal description of the interest conveyed is part of the granting clause. *Veach*, 599 P.2d at 527. But *Brown* distinguished the language used in the legal description from the language used in the granting clause. *Brown*, 924 P.2d at 914.

**11.** The Hilchkanum deed is also captioned as a "Right of Way Deed." However, the *Brown* court rejected the contention that use of the term "right of way" in the caption would

preclude a holding that a deed conveyed a fee simple interest. *Brown*, 924 P.2d at 915.

**12.** The deed provided: *"In consideration of the benefits and advantages to accrue to us from the location construction and operation of the Seattle Lake Shore and Eastern Railway in the County of King in Washington Territory, we do hereby donate grant and convey unto said Seattle Lake Shore and Eastern Railway Company a right of way one hundred (100) feet in width through our lands...."* DeGoojer Decl. Ex. 1 (emphasis added).

The said party of the first part, for and in consideration of the sum of Two Hundred and Twenty-five Dollars, ... do by these presents remise, release, and forever quit claim unto said party of the second part, and to its assigns, all that certain lot, piece or parcel of land situated in Whatcom County ... to-wit: *"A right of way* one hundred feet wide, being fifty feet on each side of the center line of the B.B. & Easter R.R. .... To have and to hold, all and singular, said premises, together with the appurtenances unto the said party of the second part, and to its assigns forever."

*Id.* Like the Hilchkanum deed, the language in the *Veach* deed did not expressly limit the use to a particular purpose. However, the district court distinguished *Veach* on the basis of other language in the Hilchkanum deed and extrinsic evidence indicating an intent to convey a fee simple estate, neither of which was present in *Veach.* *Rasmussen,* 143 F.Supp.2d at 1230 n. 4.

First, the district court compared the Hilchkanum deed's language granting an interest in the strip of land with its language granting the Railway the right to enter the adjacent land to cut trees:

> The deed grants a "strip" of land described in metes and bounds rather than merely a right "over" the land (as it does with the tree-cutting grant). The deed uses the word "convey" when granting the strip, which is associated with fee transfers (notably,"convey" is absent in the tree-cutting grant). *See Hanson,* 208 P.2d at 119.

*Id.* We agree with the district court that these factors indicate that Hilchkanum intended to convey a fee simple interest in the strip of land described. Furthermore, the fact that he explicitly limited the purpose of the Railway's right to enter the adjacent land demonstrates that he was aware of the distinction between an easement and a fee simple conveyance.[13]

■ The district court also looked to the behavior of the parties after the execution of the deed to the Railway, which bolsters the conclusion that the deed conveyed the right of way in fee. *Rasmussen,* 143 F.Supp.2d at 1230. Some of the deeds that the Hilchkanums subsequently used to convey the rest of their property explicitly excepted the strip of land belonging to the Railway. The deeds conveyed the surrounding property "less (3) acres right of way of Rail Road." By excepting the right of way in terms of acres of land, the conveyances betray an understanding that the Railway owned the strip of land and did not merely have a right to enter the strip.

The Rasmussens point out that the Hilchkanums did not mention the railroad right of way in the deed conveying lot 2, which is where most of the strip to which the Rasmussens lay claim is located. However, this does not bring into dispute the fact that the Hilchkanums intended a fee simple. Had they used other language in conveying lot 2 that recognized the Railway's right of way as only an easement, then a factual finding reconciling the contradictory positions might be necessary.

---

**13.** The Rasmussens provided evidence to the district court that Hilchkanum could not read or write the English language, suggesting that he was not aware of the wording in the deed and its effect. While the district court struck this argument from their response brief, the evidence itself was not struck. We have considered the evidence since it is part of the district court record. Nevertheless, the evidence indicates that Hilchkanum relied on friends in transacting his business. With the help of his friends, he was able to comply with the Homestead Act and make numerous conveyances of property. There is no evidence that his friends did not assist him with the transaction with the Railway such that he understood the deed's language and could reflect his intent therein.

But the total failure to except the land subject to the right of way in the lot 2 deed is not significantly probative of whether or not the parties intended to convey a fee simple estate. *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir.2000) (noting that a scintilla of evidence or evidence that is not significantly probative does not present a genuine issue of material fact).

■ Finally, the district court properly looked to the circumstances surrounding the execution of the Hilchkanum deed and concluded that they confirmed the parties' intent to convey a fee simple estate. *Rasmussen*, 143 F.Supp.2d at 1230. Deeds to the Railway from other landowners executed in the same year as the Hilchkanum deed used the same form but contained additional language explicitly restricting the grant to railroad purposes and providing that the interest would revert to the grantor if the railroad ceased to operate. *See Squire*, 801 P.2d at 1023; *Northlake Marine Works, Inc. v. City of Seattle*, 70 Wash.App. 491, 857 P.2d 283, 286–87 (Wash.Ct.App.1993). The differences in these deeds reflected the common practice of the railroads of using fee simple form deeds and adding language to include limitations requested by landowners. *See* Danaya C. Wright & Jeffrey M. Hester, *Pipes, Wires, and Bicycles: Rails–to–Trails, Utility Licenses, and the Shifting Scope of Railroad Easements From the Nineteenth to the Twenty–First Century*, 27 Ecology L.Q. 351, 378 (2000). The deed

in question here suggests that the Hilchkanums requested no such limitations.

In conclusion, "[t]he language of the deed, the behavior of the parties, and the circumstances converge to show the Hilchkanums' intent to convey a fee simple." *Rasmussen*, 143 F.Supp.2d at 1230–31. The underlying facts are undisputed, and, viewing these facts in the light most favorable to the Rasmussens, as we must on summary judgment, we conclude that King County, as the Railway's successor, possesses a fee simple in the strip of land.[14] We, therefore, affirm the district court's summary judgment in favor of King County.

## V.

### Counterclaims

■ The district court dismissed all of the Rasmussens' counter-claims either for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) or for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). We review these dismissals *de novo, see Zimmerman v. City of Oakland*, 255 F.3d 734, 737 (9th Cir.2001) (reviewing 12(b)(6) dismissal *de novo* ); *La Reunion Francaise SA v. Barnes*, 247 F.3d 1022, 1024 (9th Cir.2001) (reviewing 12(b)(1) dismissal *de novo* ), and we affirm.

### A. Takings

■ The Rasmussens argue that they are entitled to just compensation for the

---

**14.** The Rasmussens argue that the Hilchkanum deed incorrectly describes the boundaries of the right of way on which the railroad tracks lie. This does not alter King County's right to the strip of land in question. According to *DD & L, Inc. v. Burgess*, 51 Wash.App. 329, 753 P.2d 561, 564 (Wash.Ct.App.1988), "[t]hough the monument referred to in a deed does not actually exist at the time the deed was drafted, but is afterward erected by the

parties with the intention that it shall conform to the deed, it will control." The Hilchkanum deed describes the location of the railroad right of way by referring to railroad tracks not yet erected but which were erected with the intention that the location of the tracks would conform to the deed. Thus, the location of the tracks bisecting the Rasmussens' property controls.

taking of their land by the government under the state constitution and the Fifth Amendment. *See* Wash. Const., Art. 1, § 16. Their takings claim requires a finding that the Rasmussens own the strip of land. Because King County owns the strip of land in fee simple, the Rasmussens' land was not taken, and they can state no claim for which relief can be granted.

## B. *Spur Line Arguments*

■ The Rasmussens argue that King County's title to the right of way is invalid because the STB lacked subject matter jurisdiction to order interim trail use over the railroad right of way. They claim the rail line in question is a spur line over which the STB has no jurisdiction. As the district court wrote, "[b]y challenging the STB proceedings, the Rasmussens are asking the court to reverse an STB order." The courts of appeals have exclusive jurisdiction over any proceeding "to enjoin or suspend, in whole or in part, a rule, regulation, or order of the STB . . . ." 28 U.S.C. § 2321(a); *Dave v. Rails–to–Trails Conservancy,* 79 F.3d 940, 942 (9th Cir.1996) (finding that district court has no jurisdiction to hear claims that have the practical effect of seeking review of an ICC (now STB) order).

No authority supports the Rasmussens' proposition that, in spite of 28 U.S.C. § 2321, the district court had jurisdiction to consider the subject matter jurisdiction of the STB. The Rasmussens cite *Powelson v. United States,* 150 F.3d 1103, 1105 (9th Cir.1998), which holds that a statute may create subject matter jurisdiction yet not waive sovereign immunity. They then argue that, because it is not clear whether Congress has waived sovereign immunity of the STB deliberations, there must be subject matter jurisdiction. This argument has no merit. The non-waiver of sovereign immunity does not supply subject matter jurisdiction.

The Rasmussens also rely on 28 U.S.C. § 1336(b), which allows a district court to refer a question or issue to the STB and to exercise "exclusive jurisdiction of a civil action to enforce, enjoin, set aside, annul, or suspend, in whole or in part, any order of the STB arising out of such referral." This case involves no such referral, and § 1336(b) does not give the district court any power to refer a question that challenges the STB's jurisdiction to issue an order that it has already issued. The STB implicitly has answered this question by asserting jurisdiction over the rail line; judicial review of the order must be obtained directly from a court of appeals as provided by 28 U.S.C. § 2321(a).

## C. *First Amendment*

■ The Rasmussens contend that their First Amendment right to petition the government for redress has been violated because King County refused to communicate with them. In the Rasmussens' Answer and Counterclaim and in their briefing to the district court, the Rasmussens also argued that King County had violated their right to free speech. They argued that a letter from King County officials threatening to bring criminal harassment charges against Mr. Rasmussen constituted an impermissible prior restraint on his ability to say that "he shall defend his life and his property, and that he shall arm himself." The letter apparently arose after Mr. Rasmussen threatened county employees who entered the railroad right of way bisecting his land. The Rasmussens now focus only on their right to petition the government for redress of grievances.

■ Counties are liable for constitutional violations under § 1983 only if the individual officer who committed the violation was acting pursuant to a local policy, practice or custom. *Monell v. Dep't of*

*Soc. Serv.*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). The Rasmussens have failed to allege any local policy, practice or custom here. They attempt no response to this argument in their briefing to this court. The First Amendment claim was properly dismissed for failure to state a claim.

### D. Second Amendment

 John Rasmussen contends that King County violated his Second Amendment right to bear arms when it obtained an order prohibiting Rasmussen from possessing a gun. This claim must fail for the same reason the First Amendment claim fails—the failure to allege that the violation occurred pursuant to a county custom or practice. *Id.*

### E. Fourteenth Amendment Due Process and Eminent Domain

The Rasmussens argue that they have lost their property right in the railroad right of way without due process of law and that their property has been condemned by the government. They also claim that King County owes them compensation for the wrongful exercise of the federal government's power of eminent domain through the STB. These claims presume that the Rasmussens held a reversionary interest in the right of way because the original deed conveyed only an easement. Because we affirm the district court's holding that the original deed conveyed a fee simple, the Rasmussens have no rights in the subject property on which to base a due process or eminent domain claim. The district court properly dismissed these claims.

### F. Violations of Local Ordinances

The Rasmussens contend that King County violated various local ordinances in using the railroad right of way. These claims do not appear in the Rasmussens' Answer, Affirmative Defenses and Coun-

terclaims. The Rasmussens never amended their counterclaims to include these new claims. The district court did not consider them. Neither will we.

### VI.

### CONCLUSION

We affirm summary judgment in favor of King County because there are no genuine issues of fact that disparage King County's claim to a fee simple estate in the strip of land formerly used as a railroad right of way. Further, the district court properly dismissed the Rasmussens' counterclaims under Federal Rule of Civil Procedure 12(b).

AFFIRMED.