**FILED**
**MARCH 17, 2020**
**In the Office of the Clerk of Court**
**WA State Court of Appeals, Division III**

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| HANS HENNINGS and KRISTINA HENNINGS, husband and wife; and MARENGO, LLC, a Washington Limited Liability Company, | ) ) ) ) ) | No. 36430-5-III |
| Appellants, | ) ) | |
| v. | ) ) | |
| CHICAGO, MILWAUKEE & ST. PAUL RAILWAY COMPANY, a corporation of the State of Wisconsin; and ALL OTHER PERSONS OR PARTIES UNKNOWN claiming any right, title, estate, lien, or interest in the real estate described in the complaint herein, | ) ) ) ) ) ) ) ) | UNPUBLISHED OPINION |
| Defendants, | ) ) | |
| STATE OF WASHINGTON, | ) ) | |
| Respondent. | ) | |

PENNELL, C.J. — Hans and Kristina Hennings appeal a summary judgment order

dismissing their quiet title action against the State of Washington for lands previously

held by the Chicago, Milwaukee, and St. Paul Railway Company. We affirm.

No. 36430-5-III
*Hennings v. Chicago, Milwaukee & St. Paul Ry. Co.*

FACTS

In 1907, the Walla Walla Live Stock Company (Company) did "covey and warrant" a 100-foot wide strip of land to the Chicago, Milwaukee, and St. Paul Railway Company (Railroad) in "fee simple title." Clerk's Papers (CP) at 29. Under the 1907 deed, the Company retained a determinable interest in the land that made the Railroad's continued interest dependent on its compliance with several listed conditions. One condition was the Railroad

> shall complete the construction and put in operation the line of standard gauge railroad upon the strip of land hereby conveyed, within four years from the date hereof, and that a failure on their part so to do will forfeit all rights hereunder and the said land and privileges hereby granted will immediately be forfeited and revert to the [Company], its successors in interest or assigns, and that *a failure to use and operate said line of railroad for any one year* after its first construction and operation thereof *will also forfeit all interest of the [Railroad], in and to said strip of land* and undee [sic] this conveyance and the strip of land and all right and interest in and to anything conveyed hereby will forthwith be forfeited to and revert to the [Company] its successors and assigns.

*Id*. at 30[1] (emphasis added). Another condition required the Railroad to construct a sidetrack, adjacent to which the Company would be able to construct and maintain a warehouse for purposes of loading grain and produce. The deed stated that failure to

---

[1] A more legible copy of this page from the 1907 deed is appended to the brief of respondent.

2

construct a sidetrack within 90 days after completion and commencement of use of the

main track would require the Railroad to pay $1,000 to the Company, and a failure to pay

that sum would result in the Railroad's forfeiture of the strip of land, and reverter to the

Company.

Between 1907 and 1918, the Walla Walla Live Stock Company conveyed its

property to Joseph and Marie Davin. In 1918, the Davins executed a second deed to the

Railroad. The preamble to the 1918 deed quoted many of the Railroad's obligations from

the 1907 deed, including the two aforementioned conditions: the railroad-use-and-

operation requirement and the clause pertaining to the sidetrack. The 1918 deed then

declared the Davins

> hereby release the [Railroad], its successors and assigns from any and all
> further compliance whatsoever with the terms and provisions of those
> certain covenants contained in said deed of January 18, 1907, above quoted
> and particularly from the obligation to construct or maintain a sidetrack or
> other station facilities, or to permit the [Davins, as the Company's
> successors] to construct and maintain a warehouse adjacent to such
> sidetrack, and from any and all claim whatsoever by reason of any failure
> on the part of the [Railroad], its successors or assigns, to construct or
> maintain such sidetrack.

*Id*. at 34.

The Railroad's Washington lands were eventually sold to the State as part of a

bankruptcy proceeding. *Brown v. State*, 130 Wn.2d 430, 435-36, 924 P.2d 908 (1996).

The State converted the line into a recreational trail that is now known as the "Palouse to Cascades Trail." CP at 158.

In 2009, Hans and Kristina Hennings acquired the property once owned by the Davins. In 2017, the Henningses filed suit to quiet title to the former Railroad's land, now owned by the State. According to the Henningses, because the land had not been used as a railroad for more than one year, the property had reverted back to them as the Company's successors in interest. The State answered the complaint,[2] counterclaimed for declaratory judgment, and moved for summary judgment. The State argued the 1918 deed extinguished the use-and-operation requirement contained in the 1907 deed and, thus, the Henningses had no viable claim to forfeiture or reverter. The trial court agreed; it granted summary judgment in favor of the State.

The Henningses appeal.

## ANALYSIS

When analyzing the meaning of a real property deed, the court's role is to give effect to the original parties' intent. *Newport Yacht Basin Ass'n of Condo. Owners v. Supreme Nw. Inc.*, 168 Wn. App. 56, 64, 277 P.3d 18 (2012). This involves resolving

---

[2] As part of its affirmative defenses, the State asserted that, if the property had reverted back to the Henningses or their predecessors in interest, the State had since obtained title to any contested lands by virtue of adverse possession.

4

questions of fact and law: the parties' intent is a question of fact, but the effect of those intentions is a question of law. *Id.* A trial court may grant summary judgment on a deed's meaning when there are no genuine issues of material fact as to the parties' intent. *Hanson Indus., Inc. v. County of Spokane*, 114 Wn. App. 523, 526-27, 58 P.3d 910 (2002). In such circumstances, appellate review of the trial court's decision is de novo. *Brown*, 130 Wn.2d at 437 n.4.

Here, as the parties agree, the meaning of the 1907 and 1918 deeds turns solely on the language used in the two documents. On appeal, the Henningses do not dispute the 1907 deed conveyed a fee simple title determinable with the possibility of reverter.[3] Their only argument is the 1918 deed failed to release the conditions for reverter set by the 1907 deed. Specifically, the Henningses claim the 1918 deed did not release the Railroad and its successors from the requirement that the land be used and operated as a railroad. As the line has not seen a locomotive for decades, the Henningses believe the land has reverted back to them. We disagree.

---

[3] Though the Henningses rely primarily on case law related to railroad easements, they have made no affirmative argument challenging the State's characterization of the interest conveyed by the deed.

The 1918 deed is a two-page document. It begins with a lengthy preamble, reciting many of the 1907 deed's requirements. The preamble quotes the 1907 deed's railroad-use-and-operation requirement, as well as the possibility of reverter that would result from noncompliance. The preamble later quotes the portion of the 1907 deed regarding the sidetrack requirement. After noting the railway line had already been constructed and was in operation, the second page of the 1918 deed states that, in exchange for the receipt of valuable consideration, the Davins "release [the Railroad] and its successors and assigns from any and all further compliance whatsoever with the terms and provisions of those certain covenants contained in said deed of [1907], *above quoted*." CP at 34 (emphasis added). The 1918 deed does not specify whether the Railroad ever constructed a sidetrack.

By its plain terms, the 1918 deed released the Railroad from obligations set forth in the quoted portions of the 1907 deed. These included the use-and-operation requirement. While the sidetrack obligation was also quoted and then mentioned "particularly" by reference, *id.*, this reiteration of the released sidetrack obligation served merely as emphasis. It did not eliminate the deed's explicit inclusion of the use-and-operation clause as a quoted provision of the 1907 deed, which was then released. To read the 1918 deed in a manner that ignores the inclusion of the use-and-operation obligation as

6

No. 36430-5-III
*Hennings v. Chicago, Milwaukee & St. Paul Ry. Co.*

a quoted provision would violate the rule requiring us to give effect to *all* language used in a deed whenever reasonably possible. *Hodgins v. State*, 9 Wn. App. 486, 492, 513 P.2d 304 (1973).

## CONCLUSION

The determinable interest created by the 1907 deed was extinguished by the unambiguous terms of the 1918 deed. The Henningses therefore hold no interest in the land at issue in this case. The order granting summary judgment in favor of the State is affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Pennell, C.J.

WE CONCUR:

Korsmo, J.

Lawrence-Berrey, J.

7